NO. 07-08-0144-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

DECEMBER 3, 2009

______________________________


IN THE MATTER OF THE MARRIAGE OF

RITA LACKEY FILLINGIM AND WILLIS DAN FILLINGIM

_________________________________

FROM THE 31ST DISTRICT COURT OF HEMPHILL COUNTY;

NO. 4,330;


 HONORABLE STEVEN R. EMMERT, JUDGE

_______________________________


Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.


MEMORANDUM OPINION ON REHEARING


Â Â Â Â Â Â Â Â Â Â On March 24, 2009, this Court issued its original Memorandum Opinion in this case. 
Appellee filed a motion for rehearing on April 15, 2009, complaining of, among other things,
this Courtâs analysis as to whether the residuary clause contained within the decree of
divorce encompassed the disputed mineral interests at issue. Having considered
Appelleeâs Motion for Rehearing, Appellantâs Objection to Opinion Granting Motion for
Rehearing and Conditional Motion for Rehearing, Appellantâs Response to Motion for
Rehearing, and Appelleeâs Reply to Appellantâs Response on Rehearing, we hereby grant
Appelleeâs motion for rehearing, withdraw our opinion and judgment dated March 24, 2009,
and issue this opinion in lieu thereof.
Â Â Â Â Â Â Â Â Â Â Appellant, Rita Lackey Fillingim (Rita), appeals from a judgment rendered in favor
of Appellee, Willis Dan Fillingim (Dan), declaring certain mineral properties acquired during
their marriage to be his sole and separate property and finding that the Decree of Divorce
entered on June 9, 1981, did not divide or partition that property. By three issues, Rita
asserts the trial court erred (1) in determining that their Decree of Divorce did not preclude
Danâs suit under the doctrine of res judicata; (2) in finding jurisdiction existed to alter the
original property division; and (3) by declaring that Dan established his separate property
ownership of the mineral rights by clear and convincing evidence. We affirm. 
Background
Â Â Â Â Â Â Â Â Â Â Rita and Dan were married in 1970. During their marriage, by four separate
instruments, Danâs parents deeded certain mineral interests to Dan, as grantee.


 One of
the four deeds recited as consideration â$10.00 cash in hand paid and the love and
affection which we have for our children . . . .â Although the other three deeds did not
contain language indicating that the conveyances were intended to be gifts, Dan contends
that the mineral interests conveyed thereby were his separate property by virtue of being
gifts from his parents. Subsequent to receipt of the deeds, but during their marriage, Rita
and Dan jointly executed oil and gas leases pertaining to the properties and, on one
occasion, they executed a warranty deed conveying an interest in mineral rights to a third
party.
Â Â Â Â Â Â Â Â Â Â In 1981, Rita filed for divorce. It is undisputed that Dan was properly cited in
connection with the proceedings; however, during the pendency of the divorce, he did not
hire an attorney to represent him, nor did he personally appear or offer any evidence at the
final hearing. On June 9, 1981, the trial court entered a Decree of Divorce that provided,
in pertinent part, as follows:
IT IS DECREED that the estate of the parties be divided as follows:
Petitioner [Rita] is awarded the following as petitionerâs sole and separate
property, and respondent is hereby divested of all right, title, and interest in
and to such property: All property listed in Schedule A attached hereto and
made a part hereof by reference.
Â 
Respondent [Dan] is awarded the following as respondentâs sole and
separate property and petitioner is hereby divested of all right, title, and
interest in and to such property: All property listed in Schedule B attached. 
Â 
Â Â Â Â Â Â Â Â Â Â Although Schedules A and B described certain real and personal property, there
was no mention of the mineral interests the subject of this dispute.


 Each schedule did,
however, contain a residuary clause awarding each spouse âa one-half interest in all other
property or assets not otherwise disposed of or divided herein.â 
Â Â Â Â Â Â Â Â Â Â On April 28, 2006, Dan filed two proceedings seeking to clarify his ownership of the
mineral interests transferred by the deeds from his parents. Under the cause number of
his original divorce proceeding, cause number 4330, Dan filed a Petition for Clarifying
Order, wherein he sought to invoke the jurisdiction of the divorce court to âclarifyâ the 1981
divorce decree. In cause number 6397, filed in the same district court, Dan also sought
a declaratory judgment pertaining to his ownership interests. On June 14, 2006, the two
proceedings were consolidated and on July 26, 2006, Dan filed his First Amended Original
Petition requesting that the trial court grant, or declare, him the sole owner of the mineral
interests deeded to him during marriage. Dan asserted that because the mineral interests
in question were his sole and separate property at the time of his divorce, the divorce court
could not, as a matter of law, partition said interests. 
Â Â Â Â Â Â Â Â Â Â On January 22, 2008, the trial court tried Danâs suit. In addition to admitting the
aforementioned deeds into evidence, the trial court heard testimony from Dan and Rita. 
Dan testified that, when he was in his teens, his father told him numerous times that he
was going to help him with gifts of land and mineral rights. He testified that he never paid
any consideration for the properties and believed the conveyances in question were the
gifts his father had spoken of years before. 
Â Â Â Â Â Â Â Â Â Â Rita testified that her only conversations with Danâs parents regarding the
conveyances occurred when the deeds were originally given to them. Rita further testified
that each time they received a deed, she and Dan were required to sign an oil and gas
lease. She testified that Danâs parents indicated they were giving the deeds to them both
as a married couple. She denied having any conversation with Dan regarding the mineral
interests following their divorce. 
Â Â Â Â Â Â Â Â Â Â After hearing the testimony and reviewing the various conveyances, the trial court
determined Danâs parents executed the deeds intending gifts. As such, the trial court
found that the mineral interests were Danâs sole and separate property. The trial court also
found that the divorce decree did not divide or partition the separate property of the parties. 
Based upon those findings, the trial court entered judgment and Rita appealed. Â Discussion - Issue Three
Â Â Â Â Â Â Â Â Â Â For purposes of logical discussion, we will first address Ritaâs third issue wherein
she contends that the evidence offered by Dan at trial failed to establish the separate
property character of the mineral interest conveyed by three of the four deeds in dispute. 
Â Â Â Â Â Â Â Â Â Â Â In the proceedings below, it was Danâs contention that the mineral interests in
question were his separate property because they had been acquired by gift from his
parents. See Tex. Fam. Code Ann. Â§ 3.001(2) (Vernon 2006). The degree of proof
necessary to establish that property is separate property is clear and convincing evidence. 
 Id. at Â§ 3.003(b) (Vernon 2006). âClear and convincing evidenceâ is that measure or
degree of proof that will produce in the mind of the trier of fact a firm belief or conviction
as to the truth of the allegations sought to be established. Id. at Â§ 101.007 (Vernon 2008);
In re J.F.C. 96 S.W.3d 256, 264 (Tex. 2002). Rita contends that because the first deed
contained âgift language,â the absence of similar language in the remaining three deeds
is some evidence that the grantees did not intend to make a gift by those deeds. 
Â Â Â Â Â Â Â Â Â Â To give appropriate deference to the factfinderâs conclusions and the role of this
Court in conducting a sufficiency review, we assume that the factfinder resolved disputed
facts in favor of its finding if a reasonable factfinder could do so. 96 S.W.3d at 266. A
corollary to this requirement is that we also disregard all evidence that a reasonable
factfinder could have disbelieved or found to be incredible. Id. Based upon this analysis,
we are persuaded that the trial courtâs finding of separate property is such that a
reasonable trier of fact could have formed a firm belief or conviction that its finding was
true. Issue three is overruled.
Â 

Discussion - Issues One and Two
Â Â Â Â Â Â Â Â Â Â Having concluded that the trial courtâs finding of separate property does not
constitute reversible error, we proceed to consider issues one and two. By issues one and
two, Rita contends that Danâs claims are barred by the doctrine of res judicata and by the
fact that the trial court lacked jurisdiction to alter the prior divorce decree. 
Â Â Â Â Â Â Â Â Â Â A court that renders a divorce decree generally retains continuing subject-matter
jurisdiction to clarify and to enforce the decreeâs property division. Tex. Fam. Code Ann.
Â§Â§ 9.002, 9.008 (Vernon 2006).


 Specifically, the court has continuing jurisdiction to 
ârender further orders to enforce the division of property made in the decree of divorceÂ .Â .Â .
to assist in the implementation of or to clarify the prior order.â Â§ 9.006(a).


 
Â Â Â Â Â Â Â Â Â Â There are limitations, however, on the enforcement and clarification powers of the
court that rendered the divorce decree. For example, â[t]he court may specify more
precisely the manner of effecting the property division previously made if the substantive
division of property is not altered or changed. Â§ 9.006(b) (emphasis added). More
specifically, the Family Code provides, in pertinent part, as follows:
(a) A court may not amend, modify, alter, or change the division of property
made or approved in the decree of divorce or annulment. An order to
enforce the division is limited to an order to assist in the implementation of
or to clarify the prior order and may not alter or change the substantive
division of property.
Â 
(b) An order under this section that amends, modifies, alters or changes the
actual substantive division of divorce or annulment is beyond the power of
the divorce court and is unenforceable.
Â 
Â§ 9.007 (a)-(b) (emphasis added). See Shanks v. Treadway, 110 S.W.3d 444, 449 (Tex.
2003).
Â Â Â Â Â Â Â Â Â Â Section 9.007 is jurisdictional and orders violating its restrictions are void. Gainous
v. Gainous, 219 S.W.3d 97, 107-08 (Tex.App.âHouston [1st Dist.] 2006, pet. denied). 
Thus, where one party seeks to claim a share of an asset that has already been divided
in the divorce decree, the claim is barred. Brown v. Brown, 236 S.W.3d 343, 349
(Tex.App.âHouston [1st Dist.] 2007, no pet.).


 
Â Â Â Â Â Â Â Â Â Â As such, a clarifying order cannot be used to make a substantive change in the
decreeâs property division even if the decree contains a substantive legal error. Brown, 
236 S.W.3d at 349. Clarification also requires a finding, express or implied, that the
original form of the division of property lacks sufficient specificity to be enforced by
contempt. Â§ 9.008(b). If a divorce decree is unambiguous, the court has no authority to
alter or modify the original disposition of the property. Haworth v. Haworth, 795 S.W.2d
296, 300 (Tex.App.âHouston [14th Dist.] 1990, no writ]. Here, the trial court made no
finding, express or implied, that the divorce decree was ambiguous or needed clarification.
Â Â Â Â Â Â Â Â Â Â Â Therefore, the critical determining factor here is whether the mineral rights conveyed
to Dan during the marriage were divided by the original divorce decree. Jacobs v. Cude,
641 S.W.2d 258, 260 (Tex.App.âHouston [14th Dist.] 1982, writ refâd n.r.e.). Rita contends
that because all property acquired during marriage is presumed to be community property, 
and because Dan did not rebut the community property presumption at the time of divorce, 
then the mineral interests in question were community property. Rita further contends that
even though those interests were not specifically listed in the property schedules
incorporated in the divorce decree, the interests were encompassed within the terms of the
residuary clause contained within those schedules. By contrast, Dan contends that the
plain language of the decreeâs âdivision clauseâ limits the scope of the residuary clause to
the âestate of the parties,â and because the phrase âestate of the partiesâ is limited to the
community property of the marital estate and does not include separate property, the
residuary clause did not operate as to award Rita an interest in the minerals. Simply
restated, Rita contends that the decree already divided the mineral interests, whereas Dan
contends that the decree did not divide the mineral interests because they have always
been his separate property.
Â Â Â Â Â Â Â Â Â Â When interpreting a divorce decree, courts apply the general rules regarding
construction of judgments. Shanks, 110 S.W.3d at 447. Judgments are construed as a
whole to harmonize and give effect to the entire decree. Gainous, 219 S.W.3d at 110. If
the decree is unambiguous as to the propertyâs disposition, we must effectuate the order
in light of the literal language used. Shanks, 110 S.W.3d at 447. If the decree is
ambiguous, we should review the record along with the decree to aid in interpreting the
judgment. Id. Whether a divorce decree is ambiguous is a question of law. Id.



Â Â Â Â Â Â Â Â Â Â The plain and unambiguous language of the âdivision clauseâ confines the
application of the residuary clause to the âestate of the parties.â The term âestate of the
partiesâ means the community estate of the parties and does not encompass the separate
property of the parties. Cameron v. Cameron, 641 S.W.2d 210, 214-15 (Tex. 1982);
Eggemeyer v. Eggemeyer, 554 S.W.2d 137, 139 (Tex. 1977). Because a decree of
divorce using the term âestate of the partiesâ makes a division of the community estate
only, we find the residuary clause at issue did not encompass any separate property
owned by the parties. Therefore, in the final analysis, it comes down to this: Did the trial
court, at the time of divorce, intend to award Rita an interest in any undisclosed separate
property belonging to Dan? Based upon the foregoing construction, we find that the trial
court did not. Accordingly, issues one and two are overruled.
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Conclusion
Â Â Â Â Â Â Â Â Â Â We affirm the judgment of the trial court. 


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Patrick A. Pirtle

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â JusticeÂ 




yle:italic;}
span.MsoSubtleEmphasis
 {mso-style-priority:19;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:gray;
 font-style:italic;}
span.MsoIntenseEmphasis
 {mso-style-priority:21;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleReference
 {mso-style-priority:31;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 text-decoration:underline;
 text-underline:single;}
span.MsoIntenseReference
 {mso-style-priority:32;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 letter-spacing:.25pt;
 font-weight:bold;
 text-decoration:underline;
 text-underline:single;}
span.MsoBookTitle
 {mso-style-priority:33;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 letter-spacing:.25pt;
 font-weight:bold;}
p.MsoTocHeading, li.MsoTocHeading, div.MsoTocHeading
 {mso-style-noshow:yes;
 mso-style-priority:39;
 mso-style-qformat:yes;
 mso-style-parent:"Heading 1";
 mso-style-next:Normal;
 margin-top:24.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.Heading1Char
 {mso-style-name:"Heading 1 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 1";
 mso-ansi-font-size:14.0pt;
 mso-bidi-font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 font-weight:bold;}
span.Heading2Char
 {mso-style-name:"Heading 2 Char";
 mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 2";
 mso-ansi-font-size:13.0pt;
 mso-bidi-font-size:13.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading3Char
 {mso-style-name:"Heading 3 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 3";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading4Char
 {mso-style-name:"Heading 4 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 4";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.Heading5Char
 {mso-style-name:"Heading 5 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 5";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;}
span.Heading6Char
 {mso-style-name:"Heading 6 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 6";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 font-style:italic;}
span.Heading7Char
 {mso-style-name:"Heading 7 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 7";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.Heading8Char
 {mso-style-name:"Heading 8 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 8";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;}
span.Heading9Char
 {mso-style-name:"Heading 9 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 9";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.TitleChar
 {mso-style-name:"Title Char";
 mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Title;
 mso-ansi-font-size:26.0pt;
 mso-bidi-font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;}
span.SubtitleChar
 {mso-style-name:"Subtitle Char";
 mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Subtitle;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 font-style:italic;}
span.QuoteChar
 {mso-style-name:"Quote Char";
 mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Quote;
 color:black;
 font-style:italic;}
span.IntenseQuoteChar
 {mso-style-name:"Intense Quote Char";
 mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Intense Quote";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
p.NewDocument, li.NewDocument, div.NewDocument
 {mso-style-name:"New Document";
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 font-family:"Calibri","sans-serif";
 mso-fareast-font-family:Calibri;}
span.SpellE
 {mso-style-name:"";
 mso-spl-e:yes;}
span.GramE
 {mso-style-name:"";
 mso-gram-e:yes;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 font-size:10.0pt;
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:Arial;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Arial;}
 /* Page Definitions */
 @page
 {mso-footnote-separator:url("07-10-0122.cr2%20opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-10-0122.cr2%20opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-10-0122.cr2%20opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-10-0122.cr2%20opinion_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-title-page:yes;
 mso-footer:url("07-10-0122.cr2%20opinion_files/header.htm") f1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
-->








NOS. 07-10-00122-CR, 07-10-00123-CR, 07-10-00171-CR and 07-10-00172-CR

Â 

IN THE COURT OF APPEALS

Â 

FOR THE
SEVENTH DISTRICT OF TEXAS

Â 

AT
AMARILLO

Â 

PANEL A

Â 



MAY
4, 2011

Â 



Â 

GREGORIO RODRIGUEZ, APPELLANT

Â 

v.

Â 

THE STATE OF TEXAS, APPELLEE 



Â 



Â 

FROM THE COUNTY COURT AT LAW NO. 2

Â 

AND THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

Â 

NOS. 2009-455,818, 2009-458,190, 2009-425,597, 2009-422,825;

Â 

HONORABLE CECIL PURYEAR, JUDGE



Â 



Â 

Before CAMPBELL
and HANCOCK and PIRTLE, JJ.

Â 

Â 

MEMORANDUM OPINION

Â 

In each of these four appeals,
appellant Gregorio Rodriguez appeals his conviction on an open plea of guilty
and resulting sentence.

Offenses
committed on December 21, 2008:

In appellate case number 07-10-0172-CR, appellant was convicted of
evading arrest or detention with a vehicle and sentenced to 18 months in a
state jail facility;[1]

In appellate case number 07-10-0122-CR, appellant was convicted of
possession of marijuana of less than two ounces in a drug free zone and
sentenced to 12 months in the Lubbock County Jail.[2]

Offenses committed on October 25,
2009:

In appellate case number 07-10-0171-CR, appellant was convicted of
possession of a controlled substance listed in penalty group 1, cocaine of less
than one gram and sentenced to 24 months in a state jail facility;[3]

In appellate case number 07-10-0123-CR, appellant was convicted of
driving while intoxicated and sentenced to 6 months in the Lubbock County Jail.[4]

In each case, appellants
court-appointed appellate attorney has filed a motion to withdraw from
representation supported by an Anders
brief.[5]Â  Agreeing with counselÂs conclusion that the
record fails to show any arguably meritorious issue capable of supporting an
appeal, we grant the motion to withdraw in each case and affirm the trial
courtÂs judgments.

Punishment hearing testimony showed
that on December 21, 2008, a police officer saw a vehicle driving
erratically.Â  The officer attempted a
traffic stop.Â  As the officer followed
the vehicle, he saw a person leap from the vehicle while it remained in
motion.Â  The vehicle then jumped a curb,
knocked down a fence, and collided with a parked vehicle in a driveway.Â  The location of the accident was within 1,000
feet of a public school.Â  When the
officer entered the passenger compartment to turn off the ignition and place
the transmission in park, he saw an open container of alcohol.Â  An officer later also found a baggy
containing what he believed was marijuana.Â 
Police eventually were able to identify appellant as the person
operating the vehicle.

Punishment evidence also showed that
on October 25, 2009, a motor vehicle driven by appellant struck a police
vehicle in the presence of officers.Â 
Appellant attempted to flee on foot, but was apprehended and arrested
for evading arrest or detention.Â  An
officer detected the odor of alcohol on appellantÂs breath and the odor of
marijuana Âon his person.ÂÂ  While
searching appellant for weapons, the officer discovered a baggie containing
what he believed was marijuana.Â  In the
officerÂs opinion, appellant appeared intoxicated.Â  He had difficulty standing and walking and
was unresponsive to questions.Â  The
officer transported appellant to a holding facility.Â  As appellant left the police vehicle, a clear
plastic baggie containing a white powder fell from his pant leg.Â  According to a field test, the substance was
cocaine.Â  This was later confirmed by the
Texas Department of Public Safety Crime Laboratory.

Appellant was charged by indictment
or information with the four offenses, and entered guilty pleas to the charged
offenses without a plea bargain agreement.Â 
A punishment hearing in each case was held the same day as the plea
hearing.Â  The trial court admonished
appellant of the applicable ranges of punishment and determined he was a United
States citizen.Â  It also explained and determined
appellant wished to waive the right to trial by jury and the right against
self-incrimination.Â  Two police officers
gave the testimony we have summarized of the circumstances of the December 2008
and October 2009 offenses.Â  Appellant
presented two witnesses.Â  A deacon
testified of appellantÂs church involvement over the preceding five
months.Â  The second witness, a relative
of appellant, testified of his industry in the workplace, abstinence from
alcohol, and family commitment.Â 
Following the close of evidence and arguments, the court sentenced
appellant in each case.Â  Appellant
obtained trial court certification of the right of appeal and timely appealed. 

Thereafter, appellantÂs appointed appellate
counsel filed a motion to withdraw supported by an Anders brief.Â  In the brief,
he certifies to his diligent review of the record and his opinion under the
controlling authorities and facts of the cases no reversible error or arguably
legitimate ground for appeal exists.Â  The
brief discusses the procedural history of the case and the events at the plea
hearing.Â  Counsel discusses the
applicable law and sets forth the reasons he believes no arguably meritorious
issues for appeal exist.Â  A letter to
appellant from counsel, attached to counselÂs motion to withdraw, indicates
that a copy of the Anders brief and
the motion to withdraw were served on appellant, and counsel advised appellant
of his right to review the record and file a pro se response.Â  Johnson v. State, 885
S.W.2d 641, 645 (Tex.App.--Waco 1994, pet. refused).Â  By letter, this court also notified appellant
of his opportunity to submit a response to the Anders brief and motion to withdraw filed by his counsel.Â  Appellant did not file a response.

In conformity with the standards set out by
the United States Supreme Court, we will not rule on the motion to withdraw
until we have independently examined the record in each matter.Â  Nichols
v. State, 954 S.W.2d 83, 86 (Tex.App.--San
Antonio 1997, no pet.).Â  If we determine
the appeal has arguable merit, we will remand it to the trial court for
appointment of new counsel. Stafford v. State, 813 S.W.2d 503, 511 (Tex.Crim.App.1991).

In the Anders
brief, counsel concludes the appeal is frivolous.Â  We have made an independent review of the
entire record to determine whether arguable grounds supporting an appeal
exist.Â  See Penson v. Ohio, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988); Bledsoe v. State, 178 S.W.3d 824 (Tex.Crim.App.
2005).Â  We find no arguable grounds
supporting a claim of reversible error, and agree with counsel that the appeal
is frivolous.

Accordingly, we grant counselÂs motion to
withdraw[6]
in each case and affirm the judgments of the trial court.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  James
T. Campbell

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice

Do
not publish.Â  

Â 











[1]Â 
A person commits the offense of evading arrest or detention if he
intentionally flees a person he knows is a peace officer lawfully attempting to
arrest or detain him.Â  Tex.
Penal Code Ann. Â§ 38.04(a) (West Supp. 2010).Â  The offense is a state jail felony if the
actor uses a vehicle while in flight and the actor has not previously been
convicted under Penal Code Â§ 38.04.Â  Tex.
Penal Code Ann. Â§ 38.04(b)(1)(B) (West Supp. 2010).





[2]Â 
Possession of two ounces or less of marijuana is a Class B misdemeanor,
Tex. Health & Safety Code Ann. Â§ 481.121(b)(1)
(West 2010), but increases to a Class A misdemeanor if committed within 1,000
feet of the real property of a school.Â 
Tex. Health & Safety Code Ann. Â§ 481.134(f)(1)
(West 2010).Â  A Class A
misdemeanor is punishable by confinement in jail for up to one year and/or a
fine not to exceed $4,000.Â  Tex. Penal Code Ann. Â§ 12.21 (West 2003).





[3] Possession of less than one gram of
cocaine is a state jail felony.Â  Tex.
Health and Safety Code Ann. Â§ 481.102(3)(D) (West
2010) (cocaine is a Penalty Group 1 controlled substance) and Tex. Health and
Safety Code Ann. Â§ 481.115(a),(b) (West 2010) (possession of less than one gram
of cocaine is a state jail felony).Â  A
state jail felony is punishable by confinement in a state jail facility for any
term of not more than two years or less than 180 days and a fine not to exceed
$ 10,000.Â  Tex. Penal
Code Ann. Â§ 12.35 (West 2010). 





[4]Â 
In the absence of facts not charged here, driving while intoxicated is a
Class B misdemeanor.Â  A person commits
the offense of driving while intoxicated if the person is intoxicated while
operating a motor vehicle in a public place.Â 
Tex. Penal Code Ann. Â§ 49.04(a) (West 2003).Â  





[5]Â 
Anders v. California, 386 U.S.
738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and In re Schulman, 252 S.W.3d 403 (Tex.Crim.App. 2008) (orig. proceeding).





[6] Counsel shall, within five days
after the opinion is handed down, send his client a copy of the opinion and
judgment, along with notification of the defendantÂs right to file a pro se petition for discretionary
review. Tex. R. App. P. 48.4.