# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00245-CV

**Peter W. Foreman, Appellant**

**v.**

**Elma Foreman, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. D-1-FM-96-007930, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Peter W. Foreman appeals a district court order denying his motion to "clarify" certain provisions of an agreed divorce decree that had ended his marriage to the appellee, Elma Foreman. We will affirm the district court's order.

Peter and Elma[1] were married in July 1982, and their agreed divorce decree was signed by the district court in November 1996. During the marriage, Peter served in the United States Army, and he was continuing to serve at the time of the divorce. Accordingly, among the community assets to be divided upon divorce was any military retirement pay Peter would receive in the future that would be attributable to creditable service he accrued during the marriage. *See Shanks v. Treadway*, 110 S.W.3d 444, 446 (Tex. 2003) (citing *Cearley v. Cearley*, 544 S.W.2d 661, 663-64 (Tex. 1976)). The parties agreed to award Elma, and the district court rendered

---

[1] As the parties share a common surname, we will identify them by first names instead.

judgment awarding her, as her separate property, the following share of any future military retirement pay Peter would later receive:

> All right, title, and interest in and to 47% of the United States disposable retired or retainer pay to be paid as a result of Peter W. Foreman's service in the United States Army, and 47% of all increases in the United States Army disposable retirement or retainer pay due to cost of living or other reasons, if, as, and when received.

Peter acknowledges that this language, if read in isolation, would have the effect of awarding Elma a share not only of the future military retirement pay that he accrued during their marriage, but also any he accrued while the couple was not married, as it specifies no temporal limitation or means of distinguishing pay "to be paid as a result of [his] service in the United States Army" during the marriage from any accruing before or after the marriage. To this extent, the decree would award Elma portions of Peter's retirement pay that were his separate property. *See, e.g.*, *Shanks*, 110 S.W.3d at 446-47 & n.3; *see also Baxter v. Ruddle*, 794 S.W.2d 761, 763 (Tex. 1990) ("The parties were entitled to make the agreement they did, even if the trial court had been unable to order the same property division without their agreement, and the judgment agreed to by the parties is binding on them.").

Following the divorce, the parties indicate, Peter would go on to serve in the Army for another decade or more before retiring. He alleges that, in connection with his retirement, the federal Defense Finance and Accounting Services (DFAS) determined, based on the language in the parties' agreed divorce decree, that Elma was entitled to forty-seven percent of Peter's total military retirement pay, whether attributable to creditable service he accrued before, during, or after the

2

marriage and began issuing monthly checks to him and Elma in accordance with that division.[2]  Not thrilled at the prospect of his ex-wife receiving a large cut of the additional military retirement pay that he had earned during the years since he divorced her, Peter sought judicial relief.  But by then, as Peter acknowledges, the decree's property division was long since final and res judicata, and could not be attacked collaterally unless it was void, an avenue not viable here.  *See, e.g.*, *Hagen v. Hagen*, 282 S.W.3d 899, 902 (Tex. 2009).  Further, while the district court had continuing jurisdiction to *enforce* the decree's property division, *see* Tex. Fam. Code §§ 9.001, .002, .006, it had no power to "amend, modify, alter, or change" the division's substantive terms.  *Id*. § 9.007.

However, the district court did have continuing jurisdiction to "clarify" the property division, *see id*. §§ 9.007, .008, and thus Peter sought judicial relief under the rubric of seeking a "clarifying order" that the agreed divorce decree had actually been intended to award Elma a share only of the military retirement pay attributable to his creditable service during the marriage, so as to confine her award to community property.  Peter insisted that such intent was manifested in certain provisions of the decree other than the one we have previously quoted.  Specifically, Peter emphasized that, immediately following the property division, in a section of the decree titled "Payment of United States Army Retirement Pay," there appeared findings that referenced the amount of Peter's creditable service that he had accrued during the marriage:

> The Court finds, in accordance with the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408, as follows:
>
> 1.    This Court has jurisdiction over Peter W. Foreman in that his residence is in Austin, Travis County, Texas, other than because of military assignment.

---

[2]  As we discuss below, the duration of the marriage during Peter's military service qualified Elma to receive payments directly from DFAS.

2.  Petitioner, Peter W. Foreman, and Respondent, Elma Foreman, were originally married on July 3, 1982, and that marriage lasted for 12 years and 11 months or more of creditable service toward retirement.

3.  Peter W. Foreman's Social Security Number is . . . , his address is . . . , Austin, Texas . . . , and his birth date is . . . .

4.  Elma Foreman's Social Security Number is . . . , her address is . . . , Austin, Texas . . . , and her birth date is . . . .

5.  The rights of Peter W. Foreman under the Soldiers' and Sailors' Civil Relief Act of 1940 were fully observed and complied with in this cause.

6.  The award of retirement pay made to Elma Foreman in this decree is made in compliance with the Uniformed Services Former Spouses' Protection Act.

7.  It is intended by this Court and the parties that the Secretary of the Army or his designee make the payments due to Elma Foreman of her interest in the retirement benefits awarded in this decree directly to her.

Upon making these findings, the decree ordered that:

[T]he Secretary of Army or his designated agent shall pay to Elma Foreman directly, each month, her interest awarded in this decree in the United States Army disposable retired or retainer pay paid as a result of Peter W. Foreman's service in the United States Army, plus 47% of all cost-of-living or other increases in the United States Army disposable retired or retainer pay, on a monthly basis if, as, and when the retirement pay is due to be paid. It is the Court's intention that, if that dollar amount or "award" (or a larger sum as increases take effect) exceeds 50 percent of the disposable retired or retainer pay, the Secretary of Army or his designated agent shall pay to Elma Foreman the maximum amount allowable under the Uniformed Services Former Spouses' Protection Act and Peter W. Foreman shall be responsible for paying the balance of the award each month to Elma Foreman, and it is accordingly so ORDERED AND DECREED.

Peter urged that these provisions must inform construction of the decree provisions awarding Elma "47% of the United States disposable retired or retainer pay to be paid *as a result of Peter W. Foreman's service in the United States Army*," and reflect intent to limit Elma's

award solely to the portion of Peter's retirement pay attributable to the "12 years and 11 months or more of creditable service" he accrued during the marriage. Although not contending that the decree unambiguously supported this construction, Peter reasoned that tension between the two sets of provisions at least rendered the decree ambiguous as to the award of his military retirement pay, which was still sufficient to confer jurisdiction on the district court to issue the order he had requested to "clarify" that this was the proper division.[3] Peter did not, however, present additional evidence or record references to establish what the true intent of the decree and of the parties might have been, but relied entirely on the text of the decree in itself.

Elma countered that the decree unambiguously awarded her a share of Peter's total retirement pay, relying, like Peter, solely on the text of the decree. She accused Peter of seeking a substantive change in a long-since-final property division, a division to which, she emphasized, he had even agreed.[4] Following a hearing at which neither party presented evidence, the district court overruled Peter's motion to clarify without stating the specific grounds on which it relied.[5] As neither party had presented evidence, no findings of fact and conclusions of law were requested or

---

[3] Peter also sought recovery of any retirement pay Elma had already been paid in excess of this share.

[4] Further, Elma represented that the terms of the decree, including the disputed division of Peter's future military retirement pay, had been drafted by Peter himself, with the assistance of counsel, and that she had even been pro se at the time. Although Elma has presented no extrinsic evidence to illuminate the origins or circumstances surrounding the decree's drafting, we note that the face of the decree itself confirms Elma's assertions that only Peter was represented by counsel at the time of their divorce. (Incidentally, this is not the same counsel who has represented Peter in connection with his motion to clarify).

[5] Further confirming the absence of any evidence before the district court, the court emphasized in its signed order that it relied solely on "the pleadings," "the arguments presented by counsel," and the "case law," and it struck out language that would have indicated the order was also based on the court's review of "evidence."

made. Contending the district court reversibly erred, Peter then perfected this appeal to challenge the order. Elma disagrees, and brings a cross-point urging that Peter's appeal is frivolous and seeking recovery of her attorney's fees.[6]

The standard of review for a trial court's ruling on a motion for enforcement or clarification of a divorce decree appears to be an overarching abuse of discretion standard. *Murray v. Murray*, 276 S.W.3d 138, 143 (Tex. App.—Fort Worth 2008, pet. dism'd); *Hollingsworth v. Hollingsworth*, 274 S.W.3d 811, 815 (Tex. App.—Dallas 2008, no pet.). The trial court abuses its discretion when it acts unreasonably, arbitrarily, or without reference to any guiding rules or principles. *E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995). However, to the extent the district court's ruling rests on questions of law, whether in the context of an abuse-of-discretion analysis or otherwise, we review those determinations de novo. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding) (observing that a court has no "discretion" to misinterpret or misapply the law). We are to uphold the district court's order on any theory of law supported by the record. *See Rosemond v. Al-Lahiq*, 331 S.W.3d 764, 766 (Tex. 2011) (per curiam).

Under the posture of this case, the disposition of Peter's motion to clarify turns initially on construction of the agreed divorce decree as it bears upon the division of his military retirement pay. We interpret divorce decree language in the same manner as we do other judgments of courts. *See Hagen*, 282 S.W.3d at 901 (citing *Shanks*, 110 S.W.3d at 447). Further, because the divorce decree here is an agreed judgment, we apply the legal principles that govern construction of contracts. *See Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 422 (Tex. 2000). Under either

---

[6] *See* Tex. R. App. P. 45.

6

set of principles, we construe the decree as a whole and attempt to harmonize and give effect to the entire decree. *See City of Keller v. Wilson*, 168 S.W.3d 802, 811 (Tex. 2005); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005); *Shanks*, 110 S.W.3d at 447 (citing *Constance v. Constance*, 544 S.W.2d 659, 660 (Tex. 1976)). If the material provisions of the decree are unambiguous—i.e., there is only one reasonable construction of them—courts have no discretion but to give effect to the literal language used. *See El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 806 (Tex. 2012); *Hagen*, 282 S.W.3d at 901. If, on the other hand, the decree is subject to two or more reasonable interpretations, it is ambiguous, and we must inquire further to ascertain its true meaning and intent. *El Paso Field Servs., L.P.*, 389 S.W.3d at 806; *Shanks*, 110 S.W.3d at 447. Whether the decree is ambiguous is a question of law. *See Hagen*, 282 S.W.3d at 901-02 (citing *Shanks*, 110 S.W.3d at 447); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003).

As noted, Peter does not attempt to argue that the decree unambiguously awards Elma a share of only the community-property portion of his military retirement pay. Instead, he insists that, as a threshold matter, the provisions on which he relies create an ambiguity as to the intended division, thereby conferring jurisdiction on the district court to issue a clarifying order. In support, he argues that the decree at issue is similar to the one addressed in *Taylor v. Taylor*, No. 14-98-01284-CV, 2000 WL 1125540 (Tex. App.—Houston [14th Dist.] Aug. 10, 2000, pet. denied) (not designated for publication), in which the appellate court affirmed a trial court's order clarifying an agreed divorce decree to add language limiting a wife's award of military retirement benefits to those amounts earned during marriage. In *Taylor*, the property division, which included an award to the wife of "[f]orty (40%) per cent interest of disposable retirement pay due to [husband], in

7

accordance with 10 U.S.C. [§] 1408 U.S.[F].S.P.A," had been preceded by a "preamble" stating that "the parties have entered into an agreement regarding the division of their community estate." *Id*. at *2. The essence of the *Taylor* court's reasoning was that the "preamble" manifested the parties' intent to divide only their community estate and that this necessarily informed the context and scope of the specific property division that followed. *Id*. at *2-3.

In contrast, as Elma points out, the language on which Peter relies here appears after the provision dividing Peter's military requirement pay, and thus would not inform the meaning and context of the property division in the same way. Further, and perhaps more importantly, she observes that the language on which Peter relies appears in the context of findings that track federal statutory requirements that must be met in order for her to be paid her share of Peter's military retirement pay directly by the federal government. *See* 10 U.S.C. § 1408(d)(1), (2). Viewed in this statutory context, she adds, the language on which Peter relies manifests intent not to change or limit the decree's substantive property division, including her award of "47% of the United States disposable retired or retainer pay to be paid as a result of Peter W. Foreman's service in the United States Army," but merely to ensure that the federal government paid that amount to her directly.

In this regard, Elma emphasizes *Macias v. Macias*, No. 13-09-00351-CV, 2010 WL 2697139, at *2-4 (Tex. App.—Corpus Christi July 8, 2010, pet. denied) (mem. op.), in which the court of appeals affirmed a trial court order denying a motion to clarify under facts virtually identical to those here. In *Macias*, the parties' divorce decree awarded the wife:

> All right, title, and interest in and to 40 percent of the United States Army disposable retired pay to be paid as a result of [husband's] service in the United States Army,

8

and 40 percent of all increases in the United States Army disposable retired pay due to cost of living or other reasons, if, as, and when received.

*Id*. at *1.  Following the property division, as in this case, was a section of the decree entitled "Payment of United States Army Disposable Retired Pay" that included findings tracking the legal requirements for the wife to receive direct payment of her share of the husband's military retirement directly from the federal government.  These included:

> [Wife] and [husband] were originally married on February 14, 1989, and that marriage lasted for 10 years and 11 months or more, during which time [husband] served 14 years or more of creditable service towards retirement.

*Id*. at *2.  Like Peter, the husband in *Macias* argued that the decree was ambiguous and that this provision describing the period of marriage that overlapped with the husband's creditable service demonstrated the parties' intent to divide only retirement pay earned during the marriage.  *Id*.  The court of appeals disagreed that the referenced provision modified or limited the "unambiguous provision" awarding the wife forty percent of the husband's entire disposable retirement pay.  *Id*. at *3.  Instead, in the court's view, the referenced provision was meant "merely to establish that the marriage lasted long enough to satisfy the statutory requirements, not to substantively modify the property division described earlier in the decree."  *Id*. (citing 10 U.S.C. § 1408(d)(2)).  Concluding that the decree unambiguously awarded the wife forty percent of the husband's "disposable retired pay to be paid as a result of" his military service, the court of appeals held that the trial court lacked authority to "clarify" the decree in the manner the husband had requested, and thus did not err in denying the motion.  *Id*. at *3-4.

9

Although Peter insists that we should decline to follow *Macias* as a matter of "public policy," we instead find its analysis persuasive and applicable here. The decree here unambiguously awards Elma forty-seven percent of Peter's "disposable retired or retainer pay to be paid as a result of" his military service, without qualification or limitation to that attributable to creditable service he accrued during their marriage. The sole import of the "preamble" (or, more fittingly, a post-amble) on which Peter relies, considered in context, is that Elma is entitled to be paid her awarded share of Peter's military retirement pay directly from the federal government. *See* 10 U.S.C. § 1408(d)(1), (2). Neither the district court nor this Court has any discretion but to give effect to the decree's unambiguous terms. *See Shanks*, 110 S.W.3d at 448-49; *see also Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006) ("[T]he parties' intent is governed by what they said, not by what they *intended* to say but did not.").[7] Accordingly, the district court did not err or abuse its authority in denying Peter's motion to "clarify" the divorce decree—and, indeed, it had no discretion to grant that relief here.

In any event, even if Peter had demonstrated the existence of an ambiguity in regard to the share of his military retirement pay that the decree was intended to award, we would still affirm the district court's order. Upon determining the existence of an ambiguity in a judgment, the

---

[7] In his reply brief, Peter argues for the first time that "latent ambiguities" also exist in the decree. Specifically, he reasons that the award of retirement benefits appears in a section of the decree entitled "Division of Marital Estate," and the decree contemplated a "just and right division of the parties' marital estate." However, Peter did not present this argument to the district court, and even if he had, we would similarly conclude that it was without merit. *See, e.g.*, *Reiss v. Reiss*, 118 S.W.3d 439, 442 (Tex. 2003) (rejecting argument that decree's description of pension plan as community property and location of award in section dedicated to community property necessarily divided only community portion of benefits where unambiguous language awarded wife half of husband's total retirement benefits); *see also id.* ("[T]hough a trial court's incorrect characterization of property upon divorce that affects the 'just and right' division of the community estate is grounds for reversal on appeal, [husband] did not appeal the judgment in this case.") (citations omitted).

court would look to the record as a whole, in addition to the decree itself, for aid in interpreting the disputed provisions. *See Hagen*, 282 S.W.3d at 901. Further, with respect to agreed judgments, such as we have here, the court may consider parol evidence for the purpose of ascertaining the parties' intention at the time the decree was entered. *See Guerrero v. Guerra*, 165 S.W.3d 778, 783 (Tex. App.—San Antonio 2005, no pet.) (citing *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (per curiam)); *see also Ansley v. Ansley*, No. 03-01-00241-CV, 2002 WL 1991193, at *4 (Tex. App.—Austin Aug. 30, 2002, no pet.) (not designated for publication). As previously noted, Peter, though the movant, made no attempt to marshal such support to establish the true intent of the decree and of the parties, but instead relied solely on the text of the decree itself. Without more, we could not conclude that the district court abused its discretion or erred in declining to "clarify" the decree in conformity with Peter's view of its true intent.

Accordingly, we affirm the district court's order denying Peter's motion to "clarify" the divorce decree. However, concluding that Peter's appeal was not frivolous, we will overrule Elma's motion for sanctions.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Field

Affirmed

Filed: February 19, 2014

11