George Payton SHANKS, Petitioner,

v.

Kenda Carolyn (Shanks) TREADWAY,
Respondent.

No. 00–1325.

Supreme Court of Texas.

Argued April 24, 2002.

Decided June 26, 2003.

Tonya P. Johannsen, Susan Lea Hays,
Waters & Kraus, L.L.P., Dallas, for peti-
tioner.

James Warren Hryekewicz, James
Hunter Birch, Hughes & Luce, Dallas, for
respondent.

Justice O'NEILL delivered the opinion
of the Court.

The issue in this case is the proper
interpretation of a 1981 divorce decree
that divided, among other assets, retire-
ment benefits stemming from one spouse's
employment both during and after the
marriage. The trial court held that the

divorce decree awarded the non-employee spouse a specific percentage of the retirement benefits valued at the date of divorce. The court of appeals reversed, concluding that the decree unambiguously awarded the non-employee spouse a percentage of the total amount of the benefits on the date of retirement. 110 S.W.3d 1, 6. We hold that the court of appeals correctly interpreted the decree. Accordingly, we affirm the court of appeals' judgment.

## I. Background

Kenda Carolyn Treadway and George Payton Shanks married in 1962. George started working for American Airlines in 1966 and began participating in American's retirement program the following year. The program included both a defined benefit plan and a defined contribution plan.[1] George continued to work for American until his retirement in 1998.

George and Kenda divorced in 1981. In the divorce decree, the district court awarded Kenda a twenty-five percent interest in George's retirement benefits, and neither party appealed the judgment. The relevant portions of the decree provide:

> The Court finds that [George] has earned certain employee benefits under a pension plan arising out of past employment as an employee of American Airlines.

> [Kenda] is awarded a "pro-rata interest" (as hereinafter defined) of any and all sums received or paid to [George] from such pension plan and such sum or sums shall be payable to [Kenda] if, as

and when paid by American Airlines or the trustee of such plan to [George] as pension or retirement employee benefits existing because of [George's] employment.

> IT IS DECREED that [Kenda's] "pro-rata interest" shall be defined as that sum of money equal to 25% of the total sum or sums paid or to be paid to [George] from such pension or retirement plan.

. . . .

> IT IS FURTHER DECREED that all remaining right, title and interest in and to such American Airlines pension and/or retirement plan shall be and is hereby set aside to [George].

On March 9, 1998, approximately two months before his scheduled retirement date, George filed a Motion to Sign Qualified Domestic Relations Order ("QDRO"). *See* TEX. FAM.CODE § 9.102. In his motion, George proposed that the court calculate the value of both the defined benefit and defined contribution plans as of the date of divorce in awarding Kenda her twenty-five percent interest. In response, Kenda asserted that *res judicata* barred the attempted collateral attack. She requested that the district court sign her proposed QDRO, awarding her twenty-five percent of the total amount of the benefits to be paid to George.

The district court signed two QDROs— George's QDRO dividing the defined benefit plan valued at the date of divorce *and* Kenda's QDRO dividing both plans valued as of the date that George actually re-

---

1. Generally, an employee participating in a defined benefit plan will receive a future benefit based on a specified formula that often takes into account earnings, length of service, or both. Brown, Comment, *An Interdisciplinary Analysis of the Division of Pension Benefits in Divorce and Post–Judgment Partition Actions: Cures for the Inequities in Berry v.* *Berry*, 37 BAYLOR L.REV. 107, 115–16 (1985). A defined contribution plan, on the other hand, is funded by contributions of a specified amount that are invested or placed in a trust fund, and the employee is entitled upon retirement to those contributions plus the earnings thereon. *Id.* at 113.

ceived payment. In light of the inconsistent orders, George moved for reconsideration. The court granted George's motion, vacated Kenda's QDRO, and entered another QDRO valuing the defined contribution plan at the date of divorce. Kenda appealed.

The court of appeals reversed the judgment, concluding that the trial court's QDROs impermissibly altered the substantive division of property made in the original divorce decree. 110 S.W.3d at 3. The court held that the divorce decree unambiguously awarded Kenda "a twenty-five percent interest of the *total* sum or sums paid or to be paid' from [George's] pension plans and [did] not limit her award to a percentage of the benefits accrued in the plans prior to the divorce." *Id.* at 6 . The court therefore remanded the case to the district court to enter a revised QDRO awarding Kenda a twenty-five percent interest in the entire amount to be paid to George as retirement benefits. We agree with the appellate court's interpretation of the decree and therefore affirm the court of appeals' judgment.

## II. Dividing Retirement Benefits

We begin with an overview of the law that was in effect in this area at the time the decree was entered to demonstrate the complexities involved in dividing retirement benefits upon divorce. Our decisions focused first on the recognition of pension interests as community property rights and then on the separate issues of apportionment and valuation of benefits. In *Cearley v. Cearley,* we considered whether future pension benefits constitute commu-

nity property rights subject to equitable division upon divorce. 544 S.W.2d 661, 663–64 (Tex.1976). We approved of the proposition that even "nonvested[2] pension rights are … a contingent interest in property," and "to the extent that such rights derive from employment during coverture, they comprise a community asset subject to division in a dissolution proceeding." *Id.* (quoting *Brown v. Brown,* 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561, 562 (1976)). We also discussed the difficulty of computing the present value of such a contingent interest and approved the method of making the award of the non-employee spouse's community interest "effective if, as, and when the benefits are received by the [employee] spouse." *Id.* at 666.

The 1983 case *Berry v. Berry,* 647 S.W.2d 945 (Tex.1983), currently governs the division of retirement benefits. However, when the decree in question was entered in 1981, *Cearley* and *Taggart v. Taggart,* 552 S.W.2d 422 (Tex.1977), provided trial courts the formula to use in determining the community interest in retirement benefits and the non-employee spouse's share of that interest. The Court used a fraction to apportion the community interest: the number of months married under the plan divided by the total number of months employed under the plan at the time of retirement. *Taggart,* 552 S.W.2d at 424. That fraction was multiplied by the non-employee spouse's "just and right" share in the community interest as determined by the trial court (often fifty percent) and then multiplied by the value of the benefits received by the employee spouse at retirement. *Id.*[3] When the trial

---

2. Pension plan benefits become vested when the employee has an unconditional ownership interest in them; that is, the employee has the right to receive the accrued benefits upon retirement whether or not he is working for the same employer. Brown, 37 BAYLOR L.REV.

at 119. In contrast, pension benefits are "matured" when the employee is entitled to "immediate collection and enjoyment." *Id.*

3. The *Berry* decision altered this formula. 647 S.W.2d at 947. Although the Court in

court entered George and Kenda's divorce decree, it should have employed the *Taggart* formula to divide the retirement benefits, though of course the court would not have been able to insert numbers for the denominator of the community interest fraction or the value of the benefits, which could not be determined until retirement.

### III. Interpreting the Divorce Decree

 Notwithstanding the state of the law at the time the divorce decree was entered, this case does not involve a direct appeal, and we must interpret the decree to determine not what the trial court should have done but, if possible, what the court actually did. When interpreting a divorce decree, courts apply the general rules regarding construction of judgments. *Wilde v. Murchie,* 949 S.W.2d 331, 332 (Tex.1997) (per curiam) (citing *Constance v. Constance,* 544 S.W.2d 659, 660 (Tex. 1976)). Judgments should be construed as a whole to harmonize and give effect to the entire decree. *Constance,* 544 S.W.2d at 660. "[I]f the decree, when read as a whole, is unambiguous as to the property's disposition, the court must effectuate the order in light of the literal language used." *Wilde,* 949 S.W.2d at 332; *see also Baxter v. Ruddle,* 794 S.W.2d 761, 763 (Tex.1990). If the decree is ambiguous, the court should review the record along with the decree to aid in interpreting the judgment.

*Wilde,* 949 S.W.2d at 332. In addition, if a judgment is ambiguous—that is, subject to more than one reasonable interpretation—courts should adopt the construction that correctly applies the law. *MacGregor v. Rich,* 941 S.W.2d 74, 75 (Tex.1997) (per curiam). As with other written instruments, whether a divorce decree is ambiguous is a question of law. *Coker v. Coker,* 650 S.W.2d 391, 394 (Tex.1983).

The decree in question identifies George's pension plan as "arising out of past employment," but then states that Kenda is entitled to "a 'pro rata interest' ... of any and all sums received or paid to [George] from such pension plan...." The decree also defines "pro rata interest" as "25% of the total sum or sums paid or to be paid to [George] from such pension or retirement plan." The decree does not set out a specific *Taggart*-like formula to be used in calculating Kenda's interest.

 The court of appeals concluded, and we agree, that the decree is unambiguous, and Kenda should receive twenty-five percent of George's total retirement benefits. The phrase "arising out of *past* employment as an employee of American Airlines" (emphasis added) does not render the decree ambiguous, as George argues; rather, it merely serves to identify more specifically the property that is being divided (i.e., George's retirement plan).[4]

*Berry* expressly declined to overrule *Taggart* with regard to the apportionment fraction, it nevertheless effected a change in the fraction's denominator to the number of months employed under the plan at the time of divorce. *Id.; see also Grier v. Grier,* 731 S.W.2d 931, 932 (Tex.1987). *Berry* altered the valuation portion of the formula as well, requiring the value of the benefits to be calculated at the date of divorce to avoid invading the employee spouse's separate property. 647 S.W.2d at 947. It should be noted that serious concerns have been raised regarding the *Berry* formula's failure to account for post-divorce increases in the value of retirement

benefits attributable to community property contributions to the plan. Brown, 37 BAYLOR L.REV. at 152–62. In addition, the problems associated with valuing benefits differ depending on the type of plan being divided. *Id.* at 112–17, 152–62 (discussing the differences between defined benefit plans and defined contribution plans). However, the facts of the case currently before the Court do not provide us the opportunity to address those concerns in this opinion.

4. Although George's retirement benefits include both a defined benefit plan and a defined contribution plan, the decree referred to

As noted by the court of appeals, the trial court awarded Kenda an interest of all sums received under such *plan*, not an interest of presently accrued benefits under such plan. 110 S.W.3d at 6. And the plan that was in existence at the time of the divorce and referred to in the decree is the same plan in effect now that George has retired. The fact that the plan's value may have increased since the divorce does not affect the decree's plain language, which simply cannot reasonably be construed to award Kenda an interest only in the plan benefits that had accrued on the date of divorce. Whether intentional or not, the court that entered the decree failed to limit the community interest pursuant to the *Taggart* apportionment fraction and instead clearly gave Kenda a twenty-five percent interest in the *total* amount (whatever that might be) to be paid to George under the plan.

Viewing the division of the plan benefits in light of the decree as a whole, the fact that the court awarded Kenda only a twenty-five percent interest in the plan also supports our interpretation. Trial judges must carefully review all community assets in making a "just and right" division of those assets, and the retirement benefits were one of the assets considered in this case. *See Busby v. Busby*, 457 S.W.2d 551, 555 (Tex.1970). Given the complexities involved in dividing this type of asset, perhaps the trial court intended to achieve an overall just and right division by awarding Kenda a lesser interest in the total

value of the plan at retirement rather than a greater interest in a smaller portion of the benefits. We simply cannot know with certainty because the decree was never appealed. In any event, our responsibility is to construe the decree as written.

It is true, as George points out, that Texas law prohibits courts from divesting spouses of their separate property. *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 139–40 (Tex.1977). But George therefore urges us to interpret the decree to award Kenda an interest in only the community portion of the plan to avoid attributing to the trial court an intent to divide separate property, which it lacked authority to do. That argument is flawed in two respects. First, it overlooks the fact that applying *Taggart*, which was the controlling law at the time the decree was entered and required benefits to be valued at the time of their disbursement, would probably divest George of a portion of his separate property anyway. In fact, the reason the Court altered the requisite formula in *Berry* was to avoid invading a spouse's separate property. *See supra* note 3; *Berry*, 647 S.W.2d at 947.[5] This tension demonstrates the difficulty inherent in dividing pension plans that involve both separate and community property and indicates that interpreting such a division is not as simple as presuming a lack of intent to divide separate property.[6]

Such an analysis is also problematic because the fact that the district court erro-

---

them as a single plan. Because this is not a direct appeal, it is unnecessary to address at length the myriad differences between the two types of plans. Nevertheless, trial courts should take into serious consideration the kind of plan at issue when dividing and valuing retirement benefits. *See supra* note 3; Brown, 37 Baylor L.Rev. at 134–36, 156–62.

**5.** We reiterate that even after *Berry* was decided, concerns about invading separate proper-

ty remained. Brown, 37 Baylor L.Rev. at 152–62.

**6.** We recognize the importance of safeguarding individual property rights, but significantly, it was not until 1977 in *Eggemeyer* that this Court expressly and unequivocally held that a court cannot divest a spouse of his or her separate property upon divorce. *Eggemeyer*, 554 S.W.2d at 142.

neously applied the law when it entered the divorce decree does not alter the decree's plain language. In *Baxter*, which was decided after *Berry*, the divorce decree in question awarded the non-employee spouse "37 1/2% of [the employee spouse's] gross benefits, if, as and when he received them. The decree also provided that [the non-employee spouse] was to receive 37 1/2% of the total benefits that [the employee spouse] received each month." 794 S.W.2d at 763 (emphasis removed). We held that "[t]his language unambiguously provided that [the non-employee spouse] was to receive 37 1/2% of the total retirement benefits received by [the employee spouse] each month, including any post-divorce increases." *Id.*[7] We therefore enforced the decree as written even though it conflicted with *Berry*. *Id.* Similarly, we must enforce the decree as written in this case even though it conflicts with *Taggart*.

Kenda argues that the district court cannot change the substantive division of property made in the original decree. We agree. While the court may enter a "clarifying order" to enforce compliance with an insufficiently specific decree, Tex. Fam. Code § 9.008(b), a court "may not amend, modify, alter, or change the division of property made or approved in the decree of divorce." *Id.* § 9.007(a). The original decree in this case is unambiguous, and the trial court had no authority to enter an order altering or modifying the original disposition of property. *Id.*; *Pierce v. Pierce*, 850 S.W.2d 675, 679 (Tex.App.-El Paso 1993, writ denied); *see also McGehee*

*v. Epley*, 661 S.W.2d 924, 925–26 (Tex. 1983) (stating that clarification orders cannot be used to effect a substantive change in a divorce decree after the trial court's judgment becomes final). George's remedy for a substantive error of law by the trial court was by direct appeal, and he cannot now collaterally attack the judgment. *Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex.1990); *Baxter*, 794 S.W.2d at 762; *Stinson v. Stinson*, 668 S.W.2d 840, 841 (Tex.App.-San Antonio 1984, writ ref'd n.r.e.). The district court was therefore without authority to enter a QDRO altering the terms of the decree by limiting Kenda to a twenty-five percent interest in the benefits that had accrued under the plan at the time of the divorce.

## IV. Conclusion

The divorce decree is unambiguous and awarded Kenda Treadway twenty-five percent of George Shanks's total retirement benefits. The court of appeals was correct in reversing the district court's judgment, and we therefore affirm the judgment of the court of appeals.

---

7. We note, however, that we disagree with the court of appeals' conclusion in this case that the phrase "if, as, and when received" is "a term of art evidencing an intent to value a pension plan at the time of receipt rather than at the time of divorce." 110 S.W.3d at 6. In *Cearley*, when we recognized contingent pension benefits as community property rights subject to division upon divorce, we acknowl-

edged that "it may be necessary in many instances for the judgment to make the apportionment to the nonretiring spouse effective if, as, and when the benefits are received by the [employee] spouse." 544 S.W.2d at 666. The term thus reflects the contingent nature of the community's interest in the retirement benefits and not necessarily the value of that interest.