Sharon COX, Appellant

v.

J. William CARTER, Appellee.

No. 05–03–00678–CV.

Court of Appeals of Texas,
Dallas.

Sept. 21, 2004.

---

Duties to the Court," 8 ("Counsel will be civil and respectful in all communications with the judges and staff.").

Elizabeth A. Smith Darnall, Dallas, for Appellant.

J. William Carter, Fredericksburg, Charles W. Blount, III, Smith, Underwood & Perkins, Dallas, for Appellee.

Before Justices WHITTINGTON, BRIDGES, and FRANCIS.

## OPINION

Opinion by Justice WHITTINGTON.

Sharon Cox appeals a "Court Order Awarding Portion of Employee Retirement Benefits" entered by the trial judge in 2003. In one issue, Cox contends the order impermissibly changes the division of property made in the parties' 1987 divorce decree. At issue is whether Cox is entitled to the benefit of her former spouse's post-divorce salary adjustments in calculating her share of his retirement plan. We affirm the trial court's order.

### BACKGROUND

Sharon Cox and J. William Carter were married on November 10, 1972. The trial judge entered an Agreed Decree of Divorce on October 22, 1987. During the parties' marriage and after, Carter was employed by the United States Immigration and Naturalization Service and participated in a plan under the United States Civil Service Retirement System providing retirement benefits. Carter was employed by the INS for approximately thirty years before retiring in 2002.

The divorce decree contained a provision regarding Carter's retirement benefits:

[Cox] shall receive fifty percent (50%) of any profit-sharing plan, retirement plan, pension plan, employee stock option plan, or other benefit program to which J. WILLIAM CARTER is entitled, calculated as of the date of the divorce, if, as, and when received. Such sum shall be paid directly to [COX] by the employer if, as, and when received.

Neither party appealed the judgment.

The decree was modified on February 24, 1992 on Cox's motion, but the modification did not change the division of Carter's retirement benefits. The portion of the modification dealing with Carter's retirement plan specified the order was "intended to meet the requirements for a 'qualified domestic relations order' relating to the Federal Civil Service Retirement Plan." The modification order also specified Carter's Federal Civil Service Retirement Plan was specifically included in the original divorce decree's award of retirement benefits to Cox. The modification referred to the original decree, however, for the division and valuation of the benefits: "[Cox's] portion of the Federal Civil Service Retirement Plan of J. William Carter shall be paid out as specified in this Court's Agreed Decree of Divorce signed in this case on October 22, 1987."

Ten years later, Carter filed a "Petition to Clarify Prior Court Orders and Sign QDRO for Division of Marital Property Retirement Benefits." In this petition, Carter complained the 1992 modification order failed to "properly divide the employee retirement benefits provided under the U.S. Civil Service System as required by the administrator for the retirement plan participant;" specifically, the order "causes the Plan Administrator to provide a disproportionate share of benefits to [Cox] in contrast to the intent of the parties and the Court, in excess of that awarded" by the divorce decree. The trial judge

granted the motion, and on February 12, 2003, entered the order of which Cox complains.

### DISCUSSION

A trial court "may not amend, modify, alter, or change the division of property made or approved in the decree of divorce or annulment." TEX. FAM.CODE ANN. § 9.007(a) (Vernon 1998). Cox contends the trial court's 2003 order impermissibly changes the division of property made in the 1987 decree. Carter argues the 2003 order merely clarifies the decree. *See* TEX. FAM.CODE ANN. § 9.008(b) (Vernon 1998) (court may enter "clarifying order" to enforce compliance with insufficiently specific decree); TEX. FAM.CODE ANN. § 9.006(a), (b) (Vernon 1998) (court may "render further orders to enforce the division of property made in the decree ... to assist in the implementation of or to clarify the prior order;" and may "specify more precisely the manner of effecting the property division previously made if the substantive division of property is not altered or changed"). We agree with Carter that the 2003 order clarifies rather than alters the decree.

■■■ We interpret the divorce decree to determine whether the 2003 order impermissibly changed the division of property. Neither party appealed the decree. Therefore, "we must interpret the decree to determine not what the trial court should have done but, if possible, what the trial court actually did." *Shanks v. Treadway,* 110 S.W.3d 444, 447 (Tex.2003). When interpreting a divorce decree, courts apply the general rules regarding judgments. *Shanks,* 110 S.W.3d at 447. If the decree read as a whole is unambiguous as to the property's disposition, the court must effectuate the order in light of the literal language used. *Shanks,* 110 S.W.3d at 447. If the decree is ambiguous, that is,

subject to more than one reasonable interpretation, the court should review the record along with the decree to aid in interpreting the judgment. *Shanks,* 110 S.W.3d at 447. In addition, if a decree is ambiguous, courts should adopt the construction that correctly applies the law. *Shanks,* 110 S.W.3d at 447. Whether a decree is ambiguous is a question of law. *Shanks,* 110 S.W.3d at 447.

■■■ Where a divorce decree is unambiguous, the trial court has no authority to enter an order altering or modifying the original disposition of property. *Shanks,* 110 S.W.3d at 449. Clarification orders cannot be used to effect a substantive change in a divorce decree after the trial court's judgment becomes final. *Shanks,* 110 S.W.3d at 449 (citing *McGehee v. Epley,* 661 S.W.2d 924, 925–26 (Tex.1983)). Even where the trial court has made a substantive error of law, the decree's division of property cannot be altered. *See Shanks,* 110 S.W.3d at 449 (party's "remedy for a substantive error of law by the trial court was by direct appeal, and he cannot now collaterally attack the judgment").

The point of contention between the parties is whether Cox is entitled to the benefit of salary adjustments occurring after the date of her divorce from Carter in calculating her share of Carter's retirement benefits. Cox argues her share should be calculated based on Carter's benefits at the time of retirement. Carter argues Cox's share should be calculated based on his benefits as of the date of divorce. Although the record does not reflect any evidence regarding the difference between the amounts Cox would receive under the two calculations, presumably Carter enjoyed salary increases between 1987 and 2002 which would increase the amount of his retirement benefits. Taking these increases

into account in calculating Cox's share would result in a higher benefit being paid to her.

■ The original divorce decree provides Cox's share of Carter's retirement benefits were to be "calculated as of the date of the divorce." At the time of the decree, moreover, the Texas Supreme Court had decided that pension benefits accruing for services rendered after a divorce were not part of the parties' community estate subject to a just and right division. *See Berry v. Berry,* 647 S.W.2d 945, 947 (Tex.1983). Thus, under the plain language of the decree and governing Texas case law, Cox would not have been entitled to the benefit of Carter's post-divorce salary adjustments in calculating her share of his retirement benefits.

Because Carter was a federal employee, however, Cox argues the Code of Federal Regulations applies, and the language of the decree means she is entitled to the benefit of adjustments to Carter's salary. The Code of Federal Regulations does in fact so provide: "a court order that contains a general instruction to calculate the former spouse's share effective at the time of divorce or separation entitles the former spouse to the benefit of salary adjustments occurring after the specified date to the same extent as the employee." 5 C.F.R. § 838.622(c)(1)(i) (2004). Further, post-divorce salary adjustments are to be included in calculating the former spouse's share "[u]nless the court order directly and unequivocally states otherwise." 5 C.F.R. § 838.622(b)(1). At the time of both the decree and the modification order, these provisions were contained in an appendix to the Code of Federal Regulations entitled "Guidelines for Interpreting State Court Orders Dividing Civil Service Retirement Benefits," but were equally clear: "unless the court directly and unequivocally orders otherwise," divorce decrees di-

viding benefits on a percentage basis "will be interpreted as subject to adjustment for cost-of-living and salary adjustments occurring after the issuance of the decree," and "a formula containing an instruction to calculate the former spouse's share effective at the time of divorce will not be interpreted to prevent cost-of-living or salary adjustments." *See* 5 C.F.R. § 831, Appendix A to Subpart Q of Part 831, I.A. and I.D. (January 1, 1987 edition), and 5 C.F.R. § 841, Appendix A to Subpart Q of Part 841, I.A. and I.D. (January 1, 1992 edition). Carter apparently concedes the relevance and application of these provisions, as his Petition to Clarify and proposed order included language to comply with them: "The Office of Personnel Management is specifically directed not to apply salary adjustments occurring after the date of divorce in computing the Former Spouse's share of the Employee Annuity."

Thus, we are presented with the question whether we can look beyond the plain language of the decree to consider the legal effect of the federal guidelines. If we interpret the decree on its face, it awards benefits calculated as of the date of the divorce. Under this construction, the 2003 order merely clarifies that post-divorce salary adjustments are not included, and does not change or alter the division of property in the original decree. If we consider the federal guidelines, however, the legal meaning of the plain language is that Cox's benefits are to be calculated to include post-divorce adjustments. Under this construction, the 2003 order alters the original decree's division of property.

The question whether we look beyond the plain language of the decree was answered by the supreme court in *Shanks.* *See Shanks,* 110 S.W.3d at 449. In *Shanks,* the trial court held the divorce decree awarded the non-employee spouse a specific percentage of retirement bene-

fits valued at the date of divorce. *Shanks,* 110 S.W.3d at 445. We reversed, holding the decree unambiguously awarded the non-employee spouse a percentage of the total amount of benefits on the date of retirement. *See Shanks,* 110 S.W.3d at 445. The supreme court affirmed our judgment. *Shanks,* 110 S.W.3d at 449. In *Shanks,* at the time of the original divorce decree, the district court erroneously applied the law. *See Shanks,* 110 S.W.3d at 448–49. The decree conflicted with the supreme court's then-applicable opinion in *Taggart v. Taggart,* 552 S.W.2d 422 (Tex. 1977), which provided the formula to be used in determining the community interest in retirement benefits and the non-employee spouse's share of that interest. *See Shanks,* 110 S.W.3d at 446. The supreme court held this error of law did not change the plain language of the decree:

> Notwithstanding the state of the law at the time the divorce decree was entered, this case does not involve a direct appeal, and we must interpret the decree to determine not what the trial court should have done but, if possible, what the court actually did.... Whether intentional or not, the court that entered the decree failed to limit the community interest pursuant to the *Taggart* apportionment fraction and instead clearly gave [the non-employee spouse] a twenty-five percent interest in the *total* amount (whatever that might be) to be paid to [the employee spouse] under the plan.... [T]he fact that the district court erroneously applied the law when it entered the divorce decree does not alter the decree's plain language.... [W]e must enforce the decree as written in this case even though it conflicts with *Taggart.*

*Shanks,* 110 S.W.3d at 447, 448, 449 (emphasis in original).

The decree provides Cox's share is to be "calculated as of the date of divorce." We hold the decree unambiguously provides by its plain language that Cox's share is to be calculated as of the date of the divorce. We therefore enforce the decree as written, even though it conflicts with the applicable federal guidelines. *See Shanks,* 110 S.W.3d at 449; *see also Reiss v. Reiss,* 118 S.W.3d 439, 442 (Tex.2003) (where language of decree unambiguous, court interprets judgment literally; only when judgment subject to more that one reasonable interpretation does court adopt construction that correctly applies law).

We note Carter argues the original decree is "ambiguous," so that the trial court was entitled to enter the order of clarification. We disagree with Carter's assertion that the decree was ambiguous, but hold the trial court's 2003 order was a permissible clarification nonetheless. The Family Code allows a court to enter further orders to enforce the division of property; to assist in the implementation of the order; to clarify the order; and to "specify more precisely the manner of effecting the property division previously made" as long as the substantive division of property is not altered or changed. Tex. Fam.Code Ann. § 9.006(a), (b) (Vernon 1998). Here, the clarification was made to conform the language of the decree to the applicable federal regulations for administering Carter's plan.

The original divorce decree should have provided that post-divorce salary adjustments were not to be included in computing Cox's share of Carter's retirement benefits. However, neither party appealed this error. The unambiguous language of the decree provided Cox's share was to be "calculated as of the date of the divorce." That the applicable regulations may have provided otherwise at the time does not alter our duty to enforce the decree as written. *See Shanks,* 110 S.W.3d at 448.

The 2003 order clarifies the decree by explicitly directing the administrator of Carter's plan "not to apply salary adjustments occurring after the date of divorce" in calculating Cox's share. The 2003 order does not change or alter the division of property made in the 1987 divorce decree or the 1992 modification order, and does not violate section 9.007(b) of the Family Code.

We overrule Cox's sole issue and affirm the order of the trial court.