

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-17-00232-CV

Thomas Ritter **HELM**,
Appellant

v.

Lisa Lorraine **HAUSER**,
Appellee

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2015-CI-16709
Honorable Martha Tanner, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Marialyn Barnard, Justice
Patricia O. Alvarez, Justice
Irene Rios, Justice

Delivered and Filed:  June 13, 2018

AFFIRMED

Appellant Thomas Ritter Helm appeals from the trial court's judgment and domestic relations order enforcing the division of community property pursuant to a divorce decree.  For the reasons given below, we affirm the trial court's judgment.

### BACKGROUND

Thomas Ritter Helm and Lisa Lorraine Hauser were married in 1986.  In 1991, Thomas became employed in the federal civil service and continued in that position for the duration of the

parties' marriage. During his employment, Thomas accrued retirement benefits in the Federal Employee Retirement System (FERS).

In late 2008, the trial court rendered Thomas and Lisa divorced pursuant to a mediated settlement agreement (MSA). The MSA provides in pertinent part as follows: "FERS retirement—Community interest divided 50-50 with approved QDRO[.]" The trial court later signed a Final Decree of Divorce, followed by a Nunc Pro Tunc Decree of Divorce, and finally a Revised Nunc Pro Tunc Decree of Divorce (Revised Decree) dated February 24, 2010.

The Revised Decree expressly references the MSA and states "A record of the parties['] agreement is evidenced by their Mediation Agreement, signed by all parties, on December 29, 2008, and filed with the Court." Paragraph W-3 of the Revised Decree awards Lisa the following:

> W-3. Fifty (50%) percent of the community property interest whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all pro-rata increases thereof, proceeds therefrom, and any other rights related to any profit-sharing plan, 401(k) plan, employee savings plan, accrued unpaid bonuses, disability plan and thrift savings plan or other benefit existing by reason of [Thomas's] past and present employment as of December 29, 2008 as specifically set out in the Qualified Domestic Relations Order entered simultaneously herewith.[1]

In 2010, Thomas retired from the civil service and applied to receive FERS benefits. Between 2011 and 2017, Thomas received $241,985.63 in FERS benefits. Although she applied to the office managing FERS benefits to receive her share of the benefits directly, Lisa never received any benefits.

On October 1, 2015, Lisa filed an original petition asking the trial court to render a domestic relations order permitting direct payment to her of her share of the community interest in the FERS benefits. Lisa later amended her petition to seek post-divorce relief on three additional theories:

---

[1] Paragraph W-3 is identical in the Final Decree of Divorce, the Nunc Pro Tunc Decree of Divorce, and the Revised Decree.

(1) enforcement of the Revised Decree; (2) breach of the MSA; and (3) alternatively, in the event the trial court determined the Revised Decree did not do so, division of the community interest in the FERS benefits.

Following a bench trial, the trial court found that the MSA and the Revised Decree divided the community interest in the FERS benefits and the court awarded Lisa $104,001.97, plus interest. On the same date, the trial court signed an Order Dividing Federal Employees Retirement System Benefits that directed the office managing FERS benefits to pay Lisa's share of the benefits directly to her. The trial court was not asked to make, and did not make, separate findings of fact and conclusions of law. Thomas appeals.

JURISDICTION

In his first issue, Thomas argues that because the Revised Decree did not divide the FERS benefits, the trial court lacked jurisdiction to enforce such a division. Specifically, Thomas argues paragraph W-3 of the Revised Decree does not award Lisa fifty percent of the community interest in the FERS benefits. In a related second issue, Thomas argues the trial court abused its discretion by looking beyond the four corners of the Revised Decree to consider the MSA when interpreting the Revised Decree.

## A. Standard of Review

We review whether the trial court had jurisdiction de novo. *Marshall v. Priess*, 99 S.W.3d 150, 156 (Tex. App.—Houston [14th Dist.] 2002, no pet.). "The [trial] court that rendered the decree of divorce . . retains the power to enforce the property division . . . ." TEX. FAM. CODE ANN. § 9.002 (West Supp. 2017); *accord In re N.T.P.*, 402 S.W.3d 13, 23 (Tex. App.—San Antonio 2012, no pet.). The trial court may render further orders to enforce or clarify the decree so long as they do not amend, modify, alter, or change the substantive division of property. *See* TEX. FAM. CODE ANN. §§ 9.006, .007; *N.T.P.*, 402 S.W.3d at 23.

Here, to determine whether the trial court had jurisdiction, we must first ascertain whether the trial court correctly found the Revised Decree awards Lisa fifty percent of the community interest in the FERS benefits. "When interpreting a divorce decree, [we] apply the general rules regarding construction of judgments." *Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003). We construe the decree "as a whole to harmonize and give effect to [all of its provisions]." *Id.* "[I]f the decree, when read as a whole, is unambiguous as to the property's disposition, the court must effectuate the order in light of the literal language used." *Id.* (alteration in original) (quoting *Wilde v. Murchie*, 949 S.W.2d 331, 332 (Tex. 1997) (per curiam)). If the decree is ambiguous, we review both the record and the decree as a whole in order to ascertain the property's disposition. *Id.* "[W]hether a divorce decree is ambiguous is a question of law." *Id.*

**B.     Revised Decree Awards Lisa Some FERS Benefits**

The parties' dispute centers on whether paragraph W-3 of the Revised Decree awards Lisa fifty percent of the community interest in the FERS benefits. The Revised Decree does not explicitly reference FERS benefits, but paragraph W-3 contains a residuary clause awarding Lisa fifty percent of the community interest in any "other benefit existing by reason of [Thomas's] past and present employment as of December 29, 2008 as specifically set out in the Qualified Domestic Relations Order entered simultaneously herewith." Because no domestic relations order was entered "simultaneously" with the Revised Decree, Thomas argues the residuary clause does not address the FERS benefits.

A residuary clause can divide military benefits without specifically identifying them. *Buys v. Buys*, 924 S.W.2d 369, 372 (Tex. 1996). In *Buys*, for instance, a residuary clause in the parties' settlement agreement, which was incorporated into the divorce decree, awarded wife "[a]ll of the other properties, financial assets and belongings of the parties hereto, whether separate or community, not specifically set aside to [husband]." *Id.* at 370. *Buys* held the residuary clause

was a clear and unambiguous division of the community property portion of husband's military and civil service retirement benefits, which were not otherwise set aside to husband. *Id.* at 372.

Thomas, however, argues we should distinguish *Buys* because the parties' agreement in that case did not require simultaneous entry of a domestic relations order.

In response, Lisa compares this case to *DeGroot v. DeGroot*, 369 S.W.3d 918 (Tex. App.— Dallas 2012, no pet.). In *DeGroot*, the trial court awarded wife fifty percent of husband's 401(k) plan "pursuant to the terms of a Qualified Domestic Relations Order signed by the Court in this case" but did not actually sign a QDRO when it signed the divorce decree. Several years later, in post-divorce litigation, the trial court entered a QDRO for the 401(k) plan and awarded wife a money judgment for her share of the funds that husband already had liquidated. *Id.* at 923. The court of appeals affirmed and held the trial court had authority to reduce the award in the decree and the later-rendered QDRO to a money judgment. *Id.* (citing TEX. FAM. CODE ANN. § 9.010 (West 2006) (permitting court to render money judgment caused by party's failure to comply with decree of divorce)). Lisa argues *DeGroot* is persuasive authority that a division "pursuant to the terms" of an as yet unentered domestic relations order is not ambiguous. We agree.

There is no dispute that the FERS benefits are a "benefit existing by reason of [Thomas's] past and present employment as of December 29, 2008." The plain language of paragraph W-3 awards Lisa fifty percent of the community property interest in these benefits. The Revised Decree, read as a whole, contains no language conflicting with the plain meaning of paragraph W-3. Thomas's proposed construction, however, would render paragraph W-3 meaningless merely because no domestic relations order was entered "simultaneously" with the Revised Decree. Such a result is contrary to the principles governing our construction of judgments. *See Shanks*, 110 S.W.3d at 447 (requiring courts to construe judgments as a whole to give effect to all provisions).

We conclude paragraph W-3 of the Revised Decree unambiguously awards Lisa fifty percent of the community interest in the FERS benefits.[2] The trial court retained jurisdiction to enforce this division of property. *See* TEX. FAM. CODE ANN. §§ 9.002, .006. Accordingly, the trial court had jurisdiction to render the final judgment and the domestic relations order. Thomas's first issue is overruled.

## C.       Considering the MSA

In his second issue, Thomas argues the trial court abused its discretion when interpreting the Revised Decree by looking beyond its four corners and considering the MSA. The trial court was not asked to make, and did not make, separate findings of fact; it is not clear that the trial court considered the MSA when interpreting the Revised Decree. *See In re W.E.R.*, 669 S.W.2d 716, 717 (Tex. 1984) (per curiam) (holding judgment must be affirmed on any legal theory supported by the evidence when findings of fact and conclusions of law are not requested or filed). As noted above, the Revised Decree is unambiguous and may be interpreted without reference to the MSA.

Further, to the extent the trial court determined the MSA also divided the FERS benefits, the trial court was within its discretion to do so to resolve Lisa's claim for breach of the MSA. *See* TEX. FAM. CODE ANN. § 153.0071(e) (West 2014) (providing party may be entitled to judgment on mediated settlement agreement that meets statutory requirements).

Thomas's second issue is overruled.

**LIMITATIONS**

In his third issue, Thomas argues the trial court erred in failing to limit the monetary award to Lisa based on the two-year statute of limitations in Texas Family Code section 9.003(b).

---

[2] We note that even if paragraph W-3 were ambiguous, a review of the record would compel the same result because the MSA clearly reflects the parties' agreement to divide the FERS benefits "50-50." *See Shanks*, 110 S.W.3d at 447 (mandating review of the record as a whole to interpret an ambiguous decree).

Section 9.003(b) provides that a suit to enforce the division of future property not in existence at the time of the original decree, such as future retirement benefits, must be filed before the second anniversary of the date the right to the property matures or accrues or the decree becomes final, whichever date is later. *See* TEX. FAM. CODE ANN. § 9.003(b) (West 2006). However, the two-year statute of limitations in section 9.003(b) does not apply to bar another cause of action that is pleaded and proved at trial. *Preston v. Preston*, No. 04-03-00333-CV, 2004 WL 1835765, at *2 (Tex. App.—San Antonio Aug. 18, 2004, no pet.) (mem. op.). For instance, in *Preston*, we applied a four-year statute of limitations to a monetary award in favor of wife who asserted a breach of fiduciary duty claim based on husband's failure as constructive trustee to pay wife her share of retirement benefits. *Id.*; *see also Seabron v. Seabron*, No. 04-12-00482-CV, 2013 WL 4685440, at *5 (Tex. App.—San Antonio Aug. 30, 2013, pet. denied) (mem. op.) (suggesting four-year statute of limitations would have applied to monetary award for past military retirement pay if petitioner had pleaded and proved breach of fiduciary duty).

Here, Lisa asserted a claim for breach of the MSA, which is subject to a four-year statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004 (West 2002). Because the monetary award to Lisa can be affirmed on this claim, it is not barred by the two-year statute of limitations in section 9.003(b). Further, in the absence of any findings of fact, Thomas has not demonstrated the award includes amounts accrued more than four years before Lisa asserted her claim.

We overrule Thomas's third issue.

## CONCLUSION

Having overruled each of Thomas's issues, we affirm the trial court's judgment.

Patricia O. Alvarez, Justice