**Affirmed and Opinion Filed October 12, 2023**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-21-00921-CV**
_____

**IN RE THE GUARDIANSHIP OF RYAN REED ALBERS,**
**AN INCAPACITATED PERSON**

**On Appeal from the Probate Court No. 3**
**Dallas County, Texas**
**Trial Court Cause No. PR-06-03471-3**

## MEMORANDUM OPINION

Before Chief Justice Burns, Justice Nowell, and Justice Smith
Opinion by Chief Justice Burns

JoAnn Ryan, the mother and co-guardian of her adult son, Ryan Reed Albers, an incapacitated person (the Ward), appeals the probate court's possession order impliedly denying her motion to enforce the guardianship order and granting her request for clarification by specifying the times and terms of physical possession of the Ward by Ryan and William Reed Albers, the father and co-guardian of the Ward. Ryan raises six issues on appeal generally arguing: (1) the possession order infringes on Ryan's statutory rights as a co-guardian; (2) the probate court erred when it granted Albers's request to modify Ryan's powers and duties as a co-guardian,

(3) the probate court erred when it impliedly gave superior rights to a non-guardian in violation of Ryan's rights; (4) the probate court erred when it applied the incorrect standard when modifying the guardianship, and (5, 6) the evidence was legally and factually insufficient to support the order.

We conclude the probate court's possession order did not modify the guardianship under § 1202.051, Texas Estate Code. The probate court did not err when it signed the possession order. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ryan and Albers divorced in 1997. In 2005, when the Ward was seventeen years old, he suffered a traumatic brain injury from a skiing accident that left him incapacitated.

In 2007, when the Ward was eighteen years old, the probate judge signed a corrected order appointing Ryan and Albers as co-guardians of the Ward.[1] The 2007 corrected order adjudged the Ward as fully incapacitated, found that Ryan and Albers were not disqualified to serve as co-guardians, and appointed Ryan and Albers as co-guardians with all the powers permitted by law.

---

[1] The probate court generally may appoint only one guardian of an incapacitated adult. *See* TEX. EST. CODE § 1104.001(a). However, § 1104.001(b) permits a co-guardianship by both parents of an adult if it is in the best interests of the incapacitated person and the incapacitated person (1) has not been the subject of a suit affecting the parent–child relationship, or (2) has been the subject of a suit affecting the parent–child relationship and both of the incapacitated person's parents were named as joint managing conservators in the suit but are no longer serving in that capacity. *See id.* § 1104.001(b)(4). In the 2007 corrected order, the probate court found that the parties' 1997 divorce decree required Albers to continue to pay child support until the Ward reached the age of twenty-four and appointed Albers and Ryan as joint managing conservators.

The Ward's legal domicile is in a detached, garage apartment located on Albers's property, and the rent for his apartment is paid to Albers from the Ward's trust. The Ward is cared for by hired caregivers at his apartment. Ryan visited the Ward at his apartment by entering the garage from the alley. However, at some point, issues between Ryan and Albers arose that affected their ability to cooperatively serve as co-guardians.

In 2021, Ryan filed an emergency motion to enforce the 2007 corrected order, alleging that Albers was impeding her from performing her duties as a co-guardian. She also alleged that one of the Ward's caregivers was blocking her from communicating with the Ward and that Albers instructed another caregiver not to accept any supplies for the Ward from Ryan because she was not permitted onto the property. In her emergency motion, Ryan requested both enforcement and clarification of the 2007 order.

On April 27, 2021, Albers responded to Ryan's motion to enforce, in which he complained of Ryan's conduct as a co-guardian and requested and proposed a possession schedule. We paraphrase Albers's requested possession schedule as follows:

(1) Ryan shall pick up the Ward from Albers's residence promptly at 3:00 p.m. on the Wednesday and Sunday of each week beginning the first Sunday after entry of the order and shall exercise her possession at a place other than the house and lot owned by Albers;

(2) Ryan shall return the Ward to Albers's residence promptly at 4:30 p.m. on the same day as each period of possession; and

–3–

(3) Ryan shall have unlimited access to the Ward at any time when he is participating in any day program at any facility located outside Albers's residence.

Although Albers requested relief in his response, he did not serve citation on Ryan or the Ward, and the probate court did not appoint an attorney ad litem to represent the Ward or a court investigator or guardian ad litem to investigate the co-guardians' competing complaints about one another.

After a hearing, the probate judge signed a possession order that set out specific times for Ryan's possession of the Ward. That order is paraphrased as follows:

(1) Ryan will confirm with Albers via email sent one week prior to the first day of the month a monthly schedule for her possession times of the Ward.

(2) Ryan will request any changes to her possession schedule seven days in advance;

(3) In the absence of a monthly schedule, Ryan shall have possession of the Ward starting at 3:00 p.m. on the Wednesdays and Sundays of each week and shall exercise her possession at a place other than Albers's residence and return the Ward to Albers's residence by 4:30 p.m. on the same day;

(4) To exercise her periods of possession, Ryan shall get and return the Ward by entering through the garage of Albers's residence;

(5) No caregiver hired by Albers shall be required to accompany Ryan during her periods of possession and Ryan may hire any caregivers deemed necessary during her periods of possession and may submit the caregivers' hours for payment;

(6) Ryan and the caregiver on duty will jointly sign a sign-in sheet to document her timely arrival to get the Ward and the timely return of the Ward;

(7)  Ryan's failures to timely arrive to get the Ward, timely return the Ward, or timely provide notice that she will not be exercising a period of possession will be considered by the probate court in any future proceeding that seeks the removal of a co-guardian; and

(8)  If Albers and his wife travel outside the geographical areas of Dallas, Collin, Denton, Hunt, and Tarrant Counties for more than 24 consecutive hours or in the event of a medical emergency constituting an imminent threat of serious harm to the Ward's health, Ryan shall have access to the Ward at Albers's residence, but she may not have any guests with her.

The possession order also expressly ordered that the co-guardians continued to have the right to speak to any physician or therapist for the Ward, Ryan has the right to a copy of the daily input and output log prepared by the Ward's caregivers, Ryan has the right to communicate with the Ward's caregivers by text or email, and Ryan is required to deliver requested supplies for the Ward within 48 hours of a caregiver's request unless needed sooner.

## II.  CLARIFICATION OF POSSESSION

We begin with issue two because it relates to the type of statutory proceeding before the probate court, which necessarily affects our review of Ryan's other issues on appeal.  In issue two, Ryan argues the probate court erred when it granted Albers's request to modify her powers and duties as a co-guardian because Albers did not satisfy the requirements for seeking modification of the guardianship under § 1202.051.  She contends that, in his response, Albers requested affirmative relief without providing a statutory basis, and under the Texas Estates Code the only provision addressing modification is § 1202.051(a), which requires a sworn

application containing specific information and service of the citation on the guardian. In response, Albers does not contest that he failed to meet the requirements of § 1202.051(a). Instead, he contends that the rights and standards set out in the chapter 1202 do not apply because the probate court's possession order was a clarification of the rights and duties granted in its 2007 corrected order.

### A. Applicable Law

Section 1202.051 provides in part as follows:

(a) [A] ward or any person interested in the ward's welfare may file a written application with the [probate] court for an order:

. . .

    (3) finding that the ward has the capacity, or sufficient capacity with supports and services, to do some, but not all, of the tasks necessary to provide food, clothing, or shelter for himself or herself, to care for the ward's own physical health, or to manage the ward's own financial affairs and:

        (A) limiting the guardian's powers or duties; and

        (B) permitting the ward to care for himself, make personal decisions regarding residence, or manage the ward's own financial affairs commensurate with the ward's ability, with or without supports and services.

TEX. EST. CODE ANN. § 1202.051(a)(3); *see also In re Guardianship of Laroe*, No. 05-15-01006-CV, 2017 WL 511156, at *7–8 (Tex. App.—Dallas Feb. 8, 2017, pet. denied) (mem. op.); *cf.* EST. § 1151.055 (addressing applications for access to and to establish visitation with ward by relatives of ward).

An application filed under § 1202.051 must be sworn to and must state:

(1) the ward's name, sex, date of birth, and address;

–6–

(2) the name and address of any person serving as guardian of the person of the ward on the date the application is filed;

(3) the name and address of any person serving as guardian of the estate of the ward on the date the application is filed;

(4) the nature and description of the ward's guardianship;

(5) the specific areas of protection and assistance and any limitation of rights that exist;

(6) whether the relief being sought is:

(A) a restoration of the ward's capacity because the ward is no longer an incapacitated person;

(B) the granting of additional powers or duties to the guardian; or

(C) the limitation of powers granted to or duties performed by the guardian;

(7) if the relief being sought under the application is described by Subdivision (6)(B) or (C):

(A) the nature and degree of the ward's incapacity;

(B) the specific areas of protection and assistance to be provided to the ward and requested to be included in the [probate] court's order; and

(C) any limitation of the ward's rights requested to be included in the [probate] court's order;

(8) the approximate value and description of the ward's property, including any compensation, pension, insurance, or allowance to which the ward is or may be entitled; and

(9) if the ward is 60 years of age or older, the names and addresses, to the best of the applicant's knowledge, of the ward's spouse, siblings, and children or, if there is no known spouse, sibling, or child, the names and addresses of the ward's next of kin.

EST. § 1202.052.

When an application is filed under Texas Estates Code § 1202.051, citation *shall* be served on both the ward's guardian and the ward if the ward is not the applicant. EST. § 1202.053. Further, the probate court must appoint an attorney ad litem to represent a ward in a proceeding for complete restoration of the ward's capacity or for modification of the ward's guardianship. EST. § 1202.101[2]; *cf.* EST. § 1151.351(b)(12) (specifying ward's right to appointment of court investigator or guardian ad litem to investigate complaint received by probate court from ward or any person about guardianship).

At a hearing on an application for complete restoration of a ward's capacity or for modification of a ward's guardianship, the probate court must consider only evidence regarding the ward's mental or physical capacity at the time of the hearing that is relevant to restoration of capacity or modification of the guardianship, including whether the guardianship is necessary and specific powers or duties of the guardian should be limited if the ward receives supports and services. EST. § 1202.151. The party who filed the application has the burden of proof at the hearing. *Id.*

When a probate court receives an application for modification of a guardianship, the probate court must sign an order that either grants or dismisses the application. *See* EST. §§ 1202.156, 1202.157; *In re Guardianship of Croft*, 560

---

[2] We note that § 1202.101 was amended and those amendments went into effect on September 1, 2023, after the probate judge heard and ruled on this case. However, those amendments do not affect this appeal.

S.W.3d 379, 382 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (discussing restoration of capacity). An order modifying a guardianship order must contain the required findings of fact set out in § 1202.153 and comply with the general requirements set out in §§ 1202.154 and 1202.156. *See id.* §§ 1202.153–.154, 1202.156.

A person may not reapply for complete restoration of a ward's capacity or modification of a ward's guardianship before the first anniversary of the date of the hearing on the last preceding application, except as provided by the probate court for good cause shown. EST. § 1202.055; *In re Guardianship of Laroe*, 2017 WL 511156, at *11.

### B. Application of the Law to the Facts

The probate court's 2007 corrected order provided that:

(1) Albers was required to continue to pay child support for the Ward until he reached the age of twenty-four;

(2) Albers and Ryan remain joint managing conservators of the Ward;

(3) Albers and Ryan are not disqualified from and entitled to act and serve as co-guardians of the Ward with all powers attendant to being co-guardians;

(4) The Ward is a fully incapacitated person; and

(5) Albers and Ryan are appointed as co-guardians with all powers attendant to such responsibility to the full extent permitted by law.

In her emergency motion, Ryan expressly requested "enforcement of the [probate] [c]ourt's [2007 corrected] order and further clarification, if the [probate] [c]ourt finds it necessary." And, in his response, Albers requested "an order clearly

–9–

defining a set possession schedule." The probate court's possession order set out specific times for Ryan's possession of the Ward that contained greater specificity than Albers's proposed possession schedule by establishing specific protocols relating to the coordination of Ryan's periods of possession, and it required Ryan to adequately prepare a place at her residence for the Ward during his visits. *See* EST. § 1151.051(c). The possession order also expressly set out in more detail how Ryan as co-guardian continued to have the right to provide care, supervision, and protection for the Ward as well as Ryan's duty to provide the Ward with supplies. The order did not modify the guardianship itself. *See id.*

Section 1202.051 provides a process by which a person may petition the probate court to consider three possible changed circumstances requiring modification of the guardianship: (1) whether the ward is no longer incapacitated; (2) whether the ward lacks the capacity to perform some necessary tasks; or (3) whether the ward has the capacity to perform certain necessary tasks. *See* EST. § 1202.051(a)(3); *In re Guardianship of Laroe*, 2017 WL 511156, at *7–8. None of these were asserted by the parties in the proceeding before the probate court. And it is undisputed that the Ward is incapacitated and will remain so for the rest of his life; neither Ryan nor Albers sought to modify the 2007 corrected order because of a change in the Ward's mental capacity. Further, we note that the probate court did not appoint an attorney ad litem to represent the Ward nor did it appoint a court

investigator or guardian ad litem to investigate the co-guardians' competing complaints. *See* EST. §§ 1151.351(b)(12), 1202.101.

The record shows that Ryan sought clarification of the 2007 corrected order if the probate court thought it was necessary. And contrary to Ryan's characterization, we conclude that Albers's response can be construed as a request for clarification rather than a modification of the possession itself. Specifically, it can be read as a clarification of the order as to times of possession of the Ward and the protocol for coordinating same was needed. Further, it does not appear the probate court understood this to be a guardianship modification proceeding because its order does not contain the required findings and general requirements for a modification under chapter 1202 of the Texas Estates Code. Accordingly, we conclude the record does not support Ryan's contention that the possession order was a modification order pursuant to § 1202.051. *See In re Guardianship of Laroe*, 2017 WL 511156, at *8.

The 2007 corrected order does not include a possession schedule. However, the probate court's appointment of Albers and Ryan as co-guardians necessarily implied limitations on the co-guardians' rights to have physical possession of the Ward because they were divorced and not residing together at the time of their appointment. *See generally* EST. § 1151.351 (noting probate court's power to place restrictions on visitation with ward); *cf. id*. § 1151.055 (addressing applications for access to and to establish visitation with ward by non-guardian relatives of ward).

–11–

The probate court's possession order did not substantively change or alter the substance of the 2007 corrected order's provisions appointing them co-guardians but clarified that order by construing how the co-guardians' implied limited physical possession of the Ward would work. *See generally Hagen v. Hagen*, 282 S.W.3d 899, 905 (Tex. 2009) (noting that under Texas Family Code, if trial court order does not modify or amend substantive division of property set out in final decree, then court merely construes decree and order is properly classified as clarification or enforcement order); *Shanks v. Treadway*, 110 S.W.3d 444, 449 (Tex. 2003) (noting that under Texas Family Code, court may enter clarifying order to enforce compliance with insufficiently specific decree). Accordingly, we conclude the possession order was a clarification order because it enforced compliance with the 2007 corrected order which was not sufficiently specific as to the co-guardians' physical possession of the Ward.

We overrule issue two. Based on our conclusion that the probate court's possession order was a clarification of the 2007 corrected order, not a modification under chapter 1202 of the Texas Estates Code, we need not address issues four, five, and six because they are all premised on the assumption that the possession order was in effect a chapter 1202 modification order.

### III. RIGHTS OF THE CO-GUARDIAN

Next, we address issues one and three, which relate to the substance of the probate court's possession order. In issue one, Ryan argues the probate court erred

when it signed a possession order that infringed on her fundamental statutory rights as a co-guardian. Further, she argues that, as co-guardians, she and Albers have equal rights, but the possession order disproportionately restricts her ability to exercise her statutory rights as a guardian.

In issue three, Ryan argues the probate court erred when it impliedly gave superior rights to Albers's wife, a non-guardian, because it prohibits Ryan from exercising her periods of possession at the house and lot owned by Albers except when there is a medical emergency or Albers *and* his wife are traveling.

Albers responds that Ryan's statutory right to physical possession of the Ward is not synonymous with the right to conduct visits with the Ward at his domicile, so he claims the probate court's possession order actually grants Ryan more rights than she was entitled to. Also, he contends the possession order does not restrict Ryan's physical possession rights to times when Albers, his wife, or both are traveling.

### A. Standard of Review

An appellate court reviews guardianship determinations for an abuse of discretion. *See In re Guardianship of Laroe*, 2017 WL 511156, at *5. To determine whether a probate court abused its discretion, an appellate court must decide whether the probate court acted without reference to any guiding rules or principles. *See id.* An appellate court views the evidence in the light most favorable to the probate court's decision, and an abuse of discretion does not occur when the probate court's decision is based on conflicting evidence. *See id.*

–13–

### B. Applicable Law

Section 1151.051 entitles a guardian to "take charge of the person of the ward" and lists the following relevant rights and duties of the guardian of the person:

(1) the right to have physical possession of the ward and to establish the ward's legal domicile;

(2) the duty to provide care, supervision, and protection for the ward;

(3) the duty to provide the ward with clothing, food, medical care, and shelter;

(4) the power to consent to medical, psychiatric, and surgical treatment other than the inpatient psychiatric commitment of the ward.

EST. § 1151.051(c). These rights and duties are statutorily mandated by the legislature and belong to the guardian. *See In re Guardianship of Laroe*, 2017 WL 511156, at *10. But § 1151.051(c) is not an exhaustive or exclusive list of a guardian's powers, and the Texas Estates Code imposes some limitations on a guardian. *Id.* Further, an order appointing a guardian may not duplicate or conflict with the powers and duties of any other guardian. EST. § 1101.153(b). And the probate court shall use reasonable diligence to determine whether a guardian is performing all of the duties required of the guardian that relate to the guardian's ward. *Id.* § 1201.001. However, to allow someone who has not been appointed as a guardian to have any of these rights and duties, or any not provided for in the Texas Estates Code, infringes on a guardian's ability to act on behalf of the ward because of potential interference from another party. *In re Guardianship of Laroe*, 2017 WL 511156, at *10.

–14–

Section 1151.351 of the Texas Estates Code is a Bill of Rights for Wards. Est. § 1151.351.[3] Unless limitations have been imposed by a court or are otherwise imposed by law, a ward is authorized to, among others, the following: (1) to be treated with respect, consideration, and recognition of the ward's dignity and individuality; (2) to consideration of the ward's current and previously stated personal preferences, desires, medical and psychiatric treatment preferences, religious beliefs, living arrangements, and other preferences and opinions; (3) to control the ward's personal environment based on the ward's preferences; (4) to have a court investigator or guardian ad litem appointed by the probate court to investigate a complaint received by the probate court from the ward or any person about the guardianship; and (5) unimpeded, private, and uncensored communication and visitation with persons of the ward's choice. Est. § 1151.351(b)(3), (5), (9), (12), (16). However, a guardian may "limit, supervise, or restrict communication or visitation, but only to the extent necessary to protect the ward from substantial harm." *Id.* § 1151.351(b)(16)(A); *cf. id.* § 1151.055 (addressing applications for access to and visitation with ward by relatives of ward). Also, unless limited by the probate court or otherwise restricted by law, a ward is authorized to have "personal visits from the guardian or the guardian's designee at least once every three months,

___

[3] After the probate judge heard and ruled on this case, § 1151.351 was amended and those amendments went into effect on September 1, 2023. However, those amendments do not affect this appeal.

but more often, if necessary, unless the court orders otherwise." *Id.* § 1151.351(b)(19).

## *C. Application of the Law to the Facts*

As we previously noted, the probate court's 2007 corrected order appointed Albers and Ryan as co-guardians with all the powers attendant to such responsibility to the full extent permitted by law. When the probate court signed the order, Albers and Ryan were divorced and not residing together. The concept of co-guardians who do not reside together necessarily implies limitations on the co-guardians' rights to have physical possession of the ward. *See generally* EST. § 1151.351 (noting probate court's power to place restrictions on visitation with ward, including personal visitation by the guardian); *cf. id*. § 1151.055 (addressing applications for access to and to establish visitation with ward by non-guardian relatives of ward). Further, as noted above, the probate court's possession order clarified the 2007 corrected order to set out specific times for Ryan's physical possession of the Ward, established specific protocols relating to the coordination of Ryan's periods of physical possession, and expressly set out in more detail how Ryan as co-guardian continued to have the right to provide care, supervision, and protection for the Ward as well as the duty to provide the Ward with supplies. *See* EST. § 1151.051(c). And the possession order does not prevent Ryan from having any physical possession of the Ward.

In addition, Ryan claims the possession order impliedly gave superior rights to Albers's wife, a non-guardian, because it prohibits Ryan from exercising her periods of possession at the house and lot owned by Albers except when there is a medical emergency or Albers *and* his wife are traveling.

The possession order states:

> [I]f [] Albers and his wife [], travel outside the geographical area consisting of Dallas County, Collin County, Denton County, Hunt County, and Tarrant County, Texas for more than 24 consecutive hours, or alternatively in the event of any medical emergency constituting an imminent threat of serious harm to [the Ward's] health (regardless of whether or not [] Albers is absent from Albers'[s] residence) [Ryan] (but no guests) shall have access to [the Ward] during that time at his quarters at the Albers Residence. For the sake of absolute clarity, all possession of [the Ward] by [Ryan], other than a medical emergency or travel by Bill and Pervi Albers as defined in this paragraph, shall be exercised by [Ryan] off of the premises of the Albers'[s] residence, and these times are the only times when [Ryan] shall have access to the Albers' Residence.

Ryan appears to contend that the inclusive term "and" means that if Albers is traveling but his wife is not, then Ryan may not have access to the Ward at his domicile. It is this provision that she contends gives Albers's wife superior rights. We cannot agree with Ryan's conclusion as it only restricts her physical possession of the Ward at his domicile, not her possession of the Ward. Further, Albers's wife has no "superior rights" to speak of because she has no rights to the Ward at all. Nor does she have the right to prevent Ryan from exercising her possession rights. Her presence or absence may affect the places where Ryan may exercise her possession rights, but her decisions cannot deny Ryan her right of possession outright. And as

–17–

we previously noted, the probate court may place restrictions on visitation with the Ward, and the 2007 corrected order implied that Ryan's right to have physical possession of the Ward would be limited because Albers and Ryan were divorced and not residing together when they were appointed co-guardians.

The possession order does not prevent Ryan from having any possession of the Ward and it does not give Albers's wife, a non-guardian, superior rights to Ryan, a co-guardian. Accordingly, we conclude the probate court did not err when it signed the possession order. Issues one and three are overruled.

## IV. CONCLUSION

The probate court's possession order did not modify the guardianship under § 1202.051 and it did not err when it signed the possession order.

We affirm the probate court's possession order.


/Robert D. Burns, III//

210921f.p05                    ROBERT D. BURNS, III
                               CHIEF JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN RE THE GUARDIANSHIP OF RYAN REED ALBERS, AN INCAPACITATED PERSON

No. 05-21-00921-CV

On Appeal from the Probate Court No. 3, Dallas County, Texas Trial Court Cause No. PR-06-03471-3.

Opinion delivered by Chief Justice Burns. Justices Nowell and Smith participating.

In accordance with this Court's opinion of this date, the trial court's possession order is **AFFIRMED**.

It is **ORDERED** that appellee WILLIAM REED ALBERS recover his costs of this appeal from appellant JOANN RYAN.

Judgment entered this 12th day of October, 2023.